THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* CLIFFORD RYAN and THOMAS VENETUCCI, Appellants.

(Argued November 27, 1933; decided January 16, 1934.)

*Victor J. Dowling, J. Arthur Leve, Thomas A. McGrath* and *Samuel Saline,* for Clifford Ryan, appellant.   There is no proof in the record that deceased was killed by the co-defendants while engaged in the commission of a robbery, or in an attempt to rob deceased. (*United States* v. *Breitling,* 20 How. 252; *People* v. *Razezicz,* 206 N. Y. 249; *People* v. *Fitzgerald,* 156 N. Y. 253; *People* v. *Kennedy,* 32 N. Y. 141; *United States* v. *Ross,* 92 U. S. 281; *Manning* v. *Ins. Co.,* 100 U. S. 693; *Lamb* v. *Union Ry. Co.,* 195 N. Y. 260; *People* v. *Collins,* 234 N. Y. 355; *People* v. *Sobieskoda,* 235 N. Y. 411; *People* v. *Zackowitz,* 254 N. Y. 192; *People* v. *Caruso,* 246 N. Y. 437; *People*

v. *Marwig*, 227 N. Y. 382; *People* v. *Moran*, 246 N. Y. 100; *People* v. *Walsh*, 262 N. Y. 140; *People* v. *Giusto*, 206 N. Y. 67.) The admission of hearsay testimony of what the co-defendants said after their alleged return from the scene of the homicide constituted prejudicial reversible error. (*Collenger* v. *United States*, 50 Fed. Rep. [2d] 345; *Hogg* v. *United States*, 53 Fed. Rep. [2d] 967; *Logan* v. *United States*, 144 U. S. 263; *People* v. *Davis*, 56 N. Y. 95; *People* v. *Stetz*, 206 App. Div. 223; *Dowdy* v. *United States*, 46 Fed. Rep. [2d] 417; *People* v. *McQuade*, 110 N. Y. 284.)

*James D. C. Murray*, for Thomas Venetucci, appellant. There was a complete failure of proof that the killing was committed while the co-defendants were engaged in an attempt to commit a robbery. (*People* v. *Marendi*, 213 N. Y. 600; *People* v. *Squire*, 6 N. Y. Cr. Rep. 475; *People* v. *Kief*, 126 N. Y. 661; *People* v. *Razezicz*, 206 N. Y. 249; *People* v. *Kennedy*, 32 N. Y. 141; *People* v. *Harris*, 136 N. Y. 423; *People* v. *Fitzgerald*, 156 N. Y. 253; *United States* v. *Ross*, 92 U. S. 281; *Lamb* v. *Union Ry. Co.*, 195 N. Y. 260; *O'Gara* v. *Eisenlohr*, 38 N. Y. 296; *Ruppert* v. *Brooklyn H. R. R. Co.* 154 N. Y. 90.) The trial court committed reversible error in its charge in assuming that an attempted robbery had been committed and in taking from the jury the question of fact as to whether or not a homicide was committed during the progress of an attempted robbery. (*People* v. *Walsh*, 262 N. Y. 140; *People* v. *Schleiman*, 197 N. Y. 383; *People* v. *Smith*, 232 N. Y. 239.)

*Thomas C. T. Crain*, District Attorney (*Robert C. Taylor* of counsel), for respondent. There was proof that the co-defendants were engaged in an attempt to rob deceased when the homicide occurred. (*People* v. *Sullivan*, 173 N. Y. 122.) A felony murder was proved. (*People* v. *O'Neill*, 260 N. Y. 523; *People* v. *Raffaele*, 233 N. Y. 590; *People* v. *Cusamano*, 235 N. Y. 560; *People*

v. *Marino*, 235 N. Y. 560; *People* v. *Vitusky*, 155 App. Div. 139; *Justice* v. *Lang*, 52 N. Y. 323; *People* v. *Majone*, 91 N. Y. 211; *People* v. *Conroy*, 97 N. Y. 62; *People* v. *Galbo*, 218 N. Y. 283.) The statements of the co-defendants were in furtherance of the original conspiracy, and properly received for that reason. (*People* v. *Giro*, 197 N. Y. 152; *People* v. *Becker*, 215 N. Y. 126; *People* v. *Connolly*, 253 N. Y. 330.)

LEHMAN, J. The appellants, Ryan and Venetucci, were indicted jointly with Thomas Fitzgerald and John Croghan for the murder of Paul Cassullo. Fitzgerald and Croghan pleaded guilty of murder in the second degree and have been sentenced to imprisonment. Ryan and Venetucci have been convicted of murder in the first degree.

The dead body of Paul Cassullo was found at about six o'clock on the morning of December 8, 1932, on the stoop in front of a building on West Fifty-ninth street, where he conducted a grocery store and lived in an apartment above his store. Death was caused by a revolver bullet which had entered his body from the back. It was shown without dispute that Fitzgerald and Croghan had, earlier on the same morning, left Ryan and Venetucci and walked toward Fifty-ninth street with the express intention of " holding up " Cassullo when he opened the grocery store. In accordance with a prearranged design, the appellant Venetucci followed them in a car which the defendant Ryan and another youth, who maintained a speakeasy with him, had stolen. About a half hour later, Venetucci, as planned, picked up Fitzgerald and Croghan and the three proceeded to Ryan's apartment where they told Ryan that they had to shoot Cassullo. They had previously made a similar statement to Venetucci.

No eye-witnesses to the actual homicide were produced. Ryan was a half-mile away when it occurred. It is said that he participated in planning a " hold up " and even picked Cassullo's grocery store as an easy place to rob;

that he joined in secreting Fitzgerald's and Croghan's revolvers; that he loaned the automobile to be used in the proposed crime and that he expected to share in its fruits if any were obtained, though no express promise to give him anything had been made by Fitzgerald and Croghan. Perhaps all this happened and an inference might be drawn by the jury that Ryan joined in a conspiracy to commit a felony. Then he could be held as a principal, if such felony was thereafter committed or attempted, and is guilty of murder in the first degree, if Cassullo was killed by any person when engaged in the commission of, or in an attempt to commit, such felony. (Penal Law, § 1044.) If the People have proven that Cassullo was killed by Fitzgerald and Croghan while attempting to commit the felony of robbery in pursuance of a concerted plan in which Ryan and Venetucci joined, then the judgment of death must be affirmed however slight may be the defendants' guilt compared with the guilt of the ones who not only took part in the conspiracy to commit a felony, but who entered upon its execution and while so engaged committed the homicide.

The penal responsibility for the killing of a human " by a person engaged in the commission of, or in an attempt to commit a felony," which by statute extends to all concerned in the felony or " attempt to commit a felony," cannot be further extended by the courts beyond the field covered by the statute. It does not extend to every killing more or less connected with the conspiracy to commit a felony. The responsibility is confined to a killing committed during the period between the inception of the attempt to commit the felony and the consummation or the frustration and abandonment of the attempt. The question in this case is whether the evidence justifies the inference that Cassullo was killed by Fitzgerald or Croghan during that period.

It may be assumed that competent evidence admitted upon the trial justifies and indeed almost dictates the

inference that the killing was committed by Fitzgerald and Croghan. They were at the place where the body was found about the time when the killing must have occurred. They went there armed with loaded revolvers intending to commit a felony. It is possible that some other person might at that time have shot Cassullo either accidentally or in pursuance of some purpose of his own, but, in the absence of special circumstances importing some degree of probability to what would otherwise be extraordinary, a jury might well in the exercise of its reasoning faculties discard such possibility. Against the probability, tested by experience, that men bent on robbery, arming themselves with loaded revolvers, will shoot to accomplish their purpose or to effect their escape if their purpose be thwarted, the possibility that some other undisclosed armed person, for some undisclosed reason, may have shot the fatal bullet weighs but light in the balance. Quite evidently then the jury might find that the shooting of Cassullo was committed by Fitzgerald or Croghan as a result direct or remote of the conspiracy to commit a robbery.

That alone is not sufficient to sustain the conviction of these defendants who were not even present at that time. We may paraphrase what was said by this court in *People* v. *Sobieskoda* (235 N. Y. 411). " Fitzgerald and Croghan were the defendants' agents only in the prosecution of the design against Cassullo. Only what they did in the execution of that design is chargeable against the defendants. The defendants' moral guilt may be established. Their guilty design against Cassullo was the remote, if not the proximate cause of the killing. Yet, however bad their moral predicament, their legal guilt may be defined only in terms of law." The circumstantial evidence must be sufficient to permit an inference free from reasonable doubt that Cassullo was killed in the attempted *execution* of the design to commit a robbery. That is the mandate of the Legislature.

Various possibilities must be discarded before that result can be reached. The body of Cassullo was found, as stated, on the stoop in front of the building. " Presence upon the premises at the time the homicide was committed has been regarded as very important as indicating that the criminal was still engaged in the commission of the original crime." (*People* v. *Smith*, 232 N. Y. 239, 242.) That circumstance is wanting here. There is possibility that the homicide may have been accidentally committed before attempt to rob had begun or after the criminals had made good their escape from the premises. There is possibility that one of the criminals shot Cassullo for personal reasons. There is possibility that the shooting occurred after abandonment of the attempt to rob and after escape by the criminals from the premises while Cassullo was attempting to apprehend them.

We recognize that the first possibilities are remote. The last possibility creates at least a substantial question of fact. Unless the jury resolved that question against these defendants, it could not convict. (*People* v. *Marwig*, 227 N. Y. 382.) It is said that some circumstances, such as the facts that a bullet was found in the store and that the deceased was shot in the back, show that the homicide occurred before escape was effected. Whether these circumstances are sufficient to show, in spite of the place where the body was found, that the shooting occurred before abandonment of an unsuccessful attempt to rob and escape from the premises may well be debatable. It need not be decided now, for the People produced evidence that Fitzgerald and Croghan asserted or admitted to these two defendants that the homicide had occurred during the attempt to rob. If such assertions or admissions are competent evidence of the facts stated therein against the defendants then the chain of proof is complete. If incompetent then its reception and the charge based on its reception presents error requiring a reversal and a new trial at which other proof may be adduced.

The statements of Fitzgerald and Croghan concerned occurrences at which these defendants were not present and of which they had no personal knowledge. No admission of the truth of a statement made by a third party can be inferred from the silence of an auditor where the auditor is under no duty to speak and has no personal knowledge upon which he could base contradiction. That is conceded, but it is said that these statements were admissible against these defendants because made by a fellow conspirator.

Declarations made by one conspirator in the prosecution of the enterprise are evidence against all, but they must be made in furtherance of the enterprise and while the enterprise is pending. Narration of past facts after the enterprise has come to an end by success or failure is not admissible in evidence against the others. (*People* v. *Davis*, 56 N. Y. 95; *Logan* v. *United States*, 144 U. S. 263.) Here the statements were not made in furtherance of the common enterprise. That had come to an end by failure. They were merely part of explanation given for the failure. The conspirators in making the statements were certainly not acting as agents in behalf of their fellows when they made this explanation to them. It follows that the reception of this narration as evidence binding upon the defendants who had no personal knowledge of the facts is erroneous. It has no more logical probative force against them than any other hearsay testimony. It follows that the judgment of conviction must be reversed.

What we have said about Ryan applies also to Venetucci. True his participation in the original attempt to commit the felony is more direct, but as in the case of Ryan, his conviction can be sustained only upon competent proof that Cassullo was killed during the commission of an attempt to commit a felony.

The indictment against these defendants is in common-law form, but the trial judge submitted the case to the

jury only upon the theory of a felony murder. Whether the defendants might have been convicted upon another theory is not before us.

The judgments of conviction should be reversed and a new trial ordered.

POUND, Ch. J. (dissenting). The deceased, Paul Cassullo, ran a grocery store on West Fifty-ninth street, New York city. He lived in an apartment over the store. At about six o'clock in the morning of December 8, 1932, he was found leaning against the banister of the stoop in front of his residence mortally wounded. The death wound was caused by a 32-calibre revolver bullet which had entered his body from the back.

Four persons were indicted for the commission of murder, these two appellants and two others named Fitzgerald and Croghan. The prosecution accepted pleas of murder in the second degree from the two latter and they have been sentenced.

These two appellants were brought to trial upon indictments charging them with murder in the first degree, and have been convicted of that crime on the ground that they, although absent (Penal Law, § 2), aided and abetted in the commission of a felony — the attempted robbery of the deceased — during which the killing was done. (Penal Law, § 1044, subd. 2.)

No eye-witnesses to the shooting were produced. Confessions were obtained from both appellants showing guilty knowledge on their part of the purpose of Fitzgerald and Croghan to rob Cassullo.

The appellants contend that, as no evidence of the commission of an independent felony is brought home to them, the prosecution must fail. (*People* v. *Marendi*, 213 N. Y. 600, 611.) Evidence may, however, be circumstantial, as well as direct, and a verdict may be the result of justifiable inferences.

The theory of the People is that Ryan advised and

counseled the commission of the felony by planning and counseling therein before its commission and that Venetucci aided and abetted therein by accompanying Fitzgerald and Croghan, who did the actual killing, to the neighborhood of the Cassullo store and bringing them away after the killing.

Ryan lived on West Fiftieth street. He and Michael Hynes ran a speakeasy a few doors away. On the night of December 7th, both appellants and Fitzgerald and Croghan were in the speakeasy. Hynes testified that at that time there was a discussion as to a likely place to stage a robbery. Both appellants knew of the store of deceased and of his habits. Both advised the other two that Cassullo's store was an easy place to rob.

On the following afternoon Fitzgerald and Croghan came to Ryan's apartment with two revolvers, one of 32-calibre and one of 38, which were left, secreted in the inverted globe of a chandelier by either Ryan or Venetucci.

Ryan had in his possession a stolen automobile, ownership of which was claimed by him and his partner Hynes. In the confessions of both of the appellants it is admitted that all four of the alleged participants were again together in Ryan's apartment early on the morning of December 8th. This is testified to by a Miss Partridge and a sister-in-law of Ryan who were staying there. In both confessions it is stated that Ryan again said that the Fifty-ninth street place was easy. He picked out the place and told them to go there as a place where they could get some dough. The two pistols were given to Fitzgerald and Croghan in the presence of both appellants, and about five-thirty o'clock they left the apartment with them. They walked toward Fifty-ninth street, nine blocks away, Venetucci following them in a stolen car, which belonged to Ryan and Hynes, who had loaned it to them. About half an hour later Venetucci picked them up on Fifty-ninth street and they came back to Ryan's apartment where the revolvers were again secreted in the chandelier.

Venetucci threw exploded shells down the toilet. Nothing seems to have been obtained as a result of the expedition, and the confessions disclose that while there was no actual agreement as to a division of anything which was to be obtained, Ryan expected a part if anything was obtained. Fitzgerald and Croghan told Ryan when they returned to his apartment, and Venetucci when they got in his car, that they had to shoot.

A 38-calibre bullet was found on the floor in the store of Cassullo. It had passed through a box of raisins and was flattened. A 32-calibre bullet was extracted from the body of the deceased. There were no blood stains either in the store or the place where the deceased was found. The autopsy showed considerable internal hemorrhage. The deceased was a large man, weighing about 240 pounds. After several searches the police found the two revolvers in Ryan's chandelier, but this was not until after they were located through information obtained from the confessions. The deceased was found about eight feet from the door of the store, which was closed.

Summarizing this evidence, we find that both appellants knew of the deceased and knew that he opened his store about six in the morning. Fitzgerald and Croghan, who took the revolvers, had conferred with the appellants in regard to the proposed robbery of the deceased. They were advised by Ryan, at least, that such robbery would be easy.

The evidence points to an intent to commit an independent felony with the aid and advice of both appellants. It places Croghan and Fitzgerald in close proximity to the spot where the robbery was planned to take place. The deceased was killed by a 32-calibre bullet. Croghan and Fitzgerald had a pistol of such calibre. Going to Fifty-ninth street thus armed is inconsistent with any innocent purpose. It is possible but most improbable that the killing of Cassullo was committed by others than Fitzgerald and Croghan, but it is impossible to disregard

the errand on which they set forth from Ryan's. It could well have been found that the felonious intent with which they left Ryan's and which both defendants shared was continued and carried out, and that in the execution of such intent Cassullo was shot and killed.

As threats to commit a crime are constantly received in evidence as circumstances tending to connect a person with the crime (*Stokes* v. *People*, 53 N. Y. 164, 175), so plans to commit a crime may be received to connect a person with the crime thus planned. Had defendants said that they were going themselves to rob Cassullo, and Cassullo had been thereafter found killed, the inference would be reasonable that they had attempted to rob Cassullo and in the execution of such an attempt had killed him.

The evidence of a commission of a felony, although circumstantial as against defendants, is sufficient. It is impossible to disregard the part which defendants had in sending the actual killers to the Cassullo store in order to clothe them with the presumption of innocence at the conclusion of the evidence. The jury might properly draw the inference that a felony was committed and that defendants were acting as accessories thereto. (*People* v. *Sullivan*, 173 N. Y. 122, 132; *People* v. *O' Neill*, 260 N. Y. 523; *People* v. *Raffaele*, 233 N. Y. 590.) It is not to be imagined that Fitzgerald and Croghan changed their purpose and went off towards Cassullo's armed, to buy peanuts or soda water.

Defendants argue that evidence that Fitzgerald and Croghan told Ryan and Venetucci in effect that they had to kill a man, that they had both fired, was improperly admitted on the ground that such declarations were made after the so-called conspiracy to rob had come to an end. (*Logan* v. *United States*, 144 U. S. 263, 308.) Such declarations accompanied the return of the revolvers by Fitzgerald and Croghan to the Ryan apartment and the concealment thereof therein. They were not offered as

an admission that Ryan had engaged directly in the commission of the felony. It was competent in order to show that Ryan was aiding and abetting in the commission of the felony to show that the revolvers were taken from his apartment and returned thereto. The accompanying statements either were competent or, if not competent, were not prejudicial. They merely informed defendants of that which they were bound to expect, that if they sent out armed men who were intending to commit a felony, a killing would be " the natural and probable result " of such a criminal undertaking. (*Ruloff* v. *People*, 45 N. Y. 213.)

We have examined the entire record to discover error which would require reversal and find none which would " affect the substantial rights of the parties " (Code Crim. Pro. § 542). We are not unmindful that moral certainty of guilty participation by these defendants does not justify an affirmance of the judgment unless their guilt is established by competent evidence (Code Crim. Pro. § 3), but we are not bound in this case to reverse in order to prevent injustice. Defendants have been fairly tried. The jury has disposed of all questions of fact. Cassullo is dead. To do justice, we should give all the evidence a fair and reasonable meaning. Reading the evidence as reasonable men, drawing reasonable conclusions therefrom, we cannot find that there is no evidence of guilt to sustain the verdict.

The judgments of conviction should be affirmed.

KELLOGG, O'BRIEN and CROUCH, JJ., concur with LEHMAN, J.; POUND, Ch. J., dissents in opinion in which CRANE and HUBBS, JJ., concur.

Judgments reversed, etc.