OPINION OF THE COURT
Anita R. Florio, J.
Felony complaints have been filed against the defendants Raphael Torres and Hector Velez, both of whom are 14 years old, charging them, pursuant to the recently enacted juvenile offender legislation (Penal Law, § 10.00, subd 18; § 30.00, subd 2), with six counts of depraved mind murder (Penal Law, § 125.25, subd 2); six counts of felony murder (Penal Law, § 125.25, subd 3); burglary in the first degree (Penal Law, § 140.30); and arson in the second degree (Penal Law, § 150.15).
The factual allegation portion of the complaints state that on November 8, 1978, at about 4:30 a.m., the defendants, acting in concert, unlawfully entered and remained in the dwelling located at 998 Intervale Avenue, Bronx, New York, intending to commit the crime of taking a jacket they knew did not belong to them, and that in the course of committing this crime the defendants lit a torch which they threw to the floor, thereby starting a fire, with intent to damage the building and which ultimately resulted in the death of six named residents.
The District Attorney’s office refused to consent to the defense motion to transfer the case to Family Court. The top charge being murder in the second degree, the court was without power to transfer the case to Family Court on its own *769 motion or solely on the motion of defense counsel (CPL 180.75, subd 4, par [b]).
Thereupon, with the consent of all parties, an extensive preliminary hearing and inquiry was held pursuant to CPL 180.75 (subds 4, 5). One of the purposes of the inquiry was for the edification of the District Attorney, as well as of the court, as to whether the case whould be re-evaluated and transferred to the Family Court in view of the critical facts revealed during the proceeding. At the close of the hearing, the District Attorney remained adamant in his opposition to removal and expressed his desire to present the case to the Grand Jury.
A preliminary hearing is basically a first screening of the charges, its function is not to try the defendants and it does not require the same degree of proof or quality of evidence as is necessary to support an indictment or conviction at trial (People v Martinez, 80 Misc 2d 735). The court’s sole duty at such a hearing is to determine whether the People have met their burden of demonstrating reasonable cause to believe that a felony for which the defendants are criminally responsible was committed by them (CPL 180.75, subd 3, par [a]).
CPL 70.10 (subd 2) provides that: " 'Reasonable cause to believe that a person has committed an offense’ exists when evidence or information which appears reliable discloses facts or circumstances which are collectively of such weight and persuasiveness as to convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that such offense was committed and that such person committed it. Except as otherwise provided in this chapter, such apparently reliable evidence may include or consist of hearsay.”
CPL 180.60 (subd 8) provides that for the purposes of a probable cause felony hearing only nonhearsay evidence is admissible to demonstrate reasonable cause to believe that the defendant committed a felony. However, it has been established that CPL 180.60 (subd 8) does not proscribe the utilization by this court of a confession or admission made by the defendant in making its reasonable cause determination (People v Martinez, supra; Mattioli v Brown, 71 Misc 2d 99).
At the hearing, the People introduced into evidence testimony concerning inculpatory admissions made by defendant Torres to a confidante named "Tito”; a tape recording of a conversation between defendant Torres and "Tito”; the testimony of Detective John Meda concerning the admissions *770 defendants Torres and Velez made to him subsequent to their arrests; a video tape of the statements made by each of the defendants to Assistant District Attorney John Tartaglia; the testimony of the owner of the premises; and the testimony of representatives of the fire department.
A review of all the evidence presented during the hearing has led the court to the following broad factual outline of the defendants’ activities in the early morning hours of November 8, 1978. At about 4 a.m., the defendants, acting in concert, knowingly unlawfully entered and remained in the basement of 998 Intervale Avenue for the purpose of stealing a jacket. In the course of accomplishing this objective, the defendants lit a paper torch to illuminate the dark basement in order to find a jacket within the cardboard boxes containing used clothing located in the basement. The torch was then placed on the floor of the basement near these cardboard boxes of clothing and additional papers were added to it to perpetuate the light. Upon finding a jacket, the defendants proceeded to leave the premises, taking no measures to extinguish the fire they had made for the purposes of illumination, in spite of the fact that they were knowledgeable as to the inherent dangers presented by an unextinguished fire left in the presence of flammable objects. The tragic consequence of this course of action by the defendants was the death by smoke asphyxiation of six of the occupants of 998 Intervale Avenue.
It is the People’s contention that this factual scenario established that these six deaths were caused by an engine of destruction set in motion by the defendants "while in the dwelling or in immediate flight therefrom” and therefore that they have committed burglary in the first degree as defined by section 140.30 of the Penal Law.
This statute provides:
"A person is guilty of burglary in the first degree when he knowingly enters or remains unlawfully in a dwelling at night with intent to commit a crime therein, and when, in effecting entry or while in the dwelling or in immediate flight therefrom, he or another participant in the crime: * * *
"2. Causes physical injury to any person who is not a participant in the crime” (emphasis supplied).
Although a literal reading of the statute could support the People’s application of it to the facts of this case in that the cause of the six deaths, the fire, was set in motion while the *771 defendants were still in the dwelling[1] the court, after having examined the statutory history and commentary concerning section 140.30 of the Penal Law, has concluded that the causation of phsyical injury required by this statute pertains to violent or assaultive conduct upon a person in the course of commission of the burglary or in the immediate flight therefrom (see Penal Law of 1909, § 402, subd 4; Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY Book 39, Penal Law, § 140.25, p 48).. Any injury caused herein occurred after the burglary or flight therefrom had terminated. Therefore, the court has concluded that there is no reasonable basis for belief that the defendants committed the crime of burglary in the first degree.
The court has determined, however, that with regard to the crime of burglary, the proof presented to this court has established only that the defendants knowingly unlawfully entered and remained in the dwelling located at 998 Intervale Avenue at night with intent to commit the crime of petit larceny therein to wit, the unlawful taking of a jacket. The burglary thus committed is burglary in the second degree, as set forth in subdivision 2 of section 140.25 of the Penal Law which it must be noted is not a crime for which a juvenile of the age of 14 is criminally responsible, as it was designedly omitted from the list of juvenile offender crimes contained in subdivision 18 of section 10.00 of the Penal Law and subdivision 2 of section 30.00 of the Penal Law.
The court having found reasonable cause for belief that the defendants committed the crime of burglary in the second degree as defined in subdivision 2 of section 140.25 of the Penal Law and employed a lit paper torch during the commission of the crime while on the premises, the issue arises as to whether these acts, which resulted in the deaths of six individ *772 uals, fall within the parameters of felony murder as set forth in subdivision 3 of section 125.25 of the Penal Law, which provides, in relevant part: "§ 125.25 Murder in the second degree. * * * 3. Acting either alone or with one or more other persons, he commits or attempts to commit robbery, burglary, kidnapping, arson, rape in the first degree, sodomy in the first degree, sexual abuse in the first degree, escape in the first degree, or escape in the second degree, and, in the course of and in furtherance of such crime or of immediate flight therefrom, he, or another participant, if there be any, causes the death of a person other than one of the participants” (emphasis supplied).
In People v Ryan (263 NY 298, 302) our Court of Appeals defined and delineated criminal responsibility under the then felony murder statute,[2] as follows: "The penal responsibility for the killing of a human 'by a person engaged in the commission of, or in an attempt to commit a felony,’ which by statute extends to all concerned in the felony or 'attempt to commit a felony,’ cannot be further extended by the courts beyond the field covered by the statute. It does not extend to every killing more or less connected with the conspiracy to commit a felony. The responsibility is confined to a killing committed during the period between the inception of the attempt to commit the felony and the consummation or the frustration and abandonment of the attempt.”
The extension of culpability for felony murder to deaths of nonparticipants that occur "in the course of and in furtherance of such crime or of immediate flight therefrom”[3] (Penal Law, § 125.25, subd 3) requires a concomitant extension of the rule enunciated in Ryan (supra) that places the termination point for felony murder liability at the moment flight has ceased (see People v Gladman, 41 NY2d 123).
Accordingly, the issue squarely presented to the court for its determination is whether reasonable cause has been demonstrated by the People that the six deaths which occurred in the present case were caused by the defendants during the *773 course of events in furtherance of the burglary or of immediate flight therefrom as defined in subdivision 2 of section 140.25 of the Penal Law. The court finds that for purposes of the "felony murder” statute, (Penal Law, § 125.25, subd 3), the underlying felony of burglary in the second degree (Penal Law, § 140.25, subd 2), had been consummated and terminated prior to the ensuing deaths of the six individuals; and, further, that it cannot be said that these deaths were caused by the defendants in the course of their immediate flight from the commission of the burglary within the meaning of the statute. In view of this finding, the court does not have occasion to reach the further issue as to whether in any event the commission by a juvenile offender of the acts constituting burglary in the second degree (Penal Law, § 140.25, subd 2) can constitute the predicate felony for a charge of felony murder, in view of the fact that the juvenile cannot be held criminally responsible for the independent crime of burglary in the second degree (Penal Law, § 140.25, subd 2; § 10.00, subd 18; § 30.00, subds 2, 3; see People v Roper, 259 NY 170; People ex rel. Davis v Warden of Penitentiary of City of N. Y., Ind. No. 2240/78 [Supreme Ct., Bronx County, Oct. 26, 1978]; McQuillan, Felony Murder and the Juvenile Offender, NYLJ, Aug. 25, 1978, p 1, col 2).
The court now turns its attention to the charge of arson in the second degree (Penal Law, § 150.15). This statute provides: "§ 150.15 Arson in the second degree. A person is guilty of arson in the second degree when he intentionally damages a building by starting a fire and when (a) another person who is not a participant in the crime is present in such building at the time, and (b) the defendant knows that fact or the circumstances are such as to render the presence of such a person therein a reasonable possibility.”
An analysis of the statute results in the following breakdown of the essential elements of this crime:
(1) Defendants intentionally started a fire;
(2) Defendants acted with intent to damage a building;
(3) Another person, not a participant, is present in the building;
(4) Defendants knew that fact or circumstances were such as to render the presence of such person therein a reasonable possibility; and
(5) Damage to the building was actually caused.
*774 The court has concluded that the evidence has demonstrated reasonable cause to believe that all of these elements of the crime of arson in the second degree are present in the instant case.
The existence of elements 3, 4 and 5 is not contested. Therefore, only elements 1 and 2 require any discussion by the court. The court finds that in regard to element 1, the defendants’ lighting a torch while in the basement of 998 Intervale Avenue for the purpose of illumination to enable them to carry out their design of stealing a jacket constitutes the intentional starting of a fire for purposes of section 150.15 of the Penal Law. (See Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 150.05, p 86.)
In regard to the remaining element of intentional damage of the building by the defendants, the court, must refer to the following definition of intent found in subdivision 1 of section 15.05 of the Penal Law: " 'Intentionally.’ a person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct.”
It is a fundamental rule "that a person is presumed to intend the natural and probable consequence of his act” (People v Lieberman, 3 NY2d 649, 652).
The court finds that reasonable cause was established by the evidence to support the conclusion that the defendants, acting in concert, intentionally caused damage to the building located at 998 Interval Avenue, in that the defendants left a live fire burning upon the wooden floor of the basement in close proximity to papers and other readily combustible objects, taking no measures to contain the fire or to extinguish it.
Based on the foregoing reasons, the court has determined that reasonable cause exists for belief that the defendants committed the crime of arson in the second degree (Penal Law, §§ 150.15, 10.00, subd 18; § 30.00, subd 2).
Fire Marshal Carmine Vaccariello testified as to his findings concerning the fire at 998 Intervale Avenue after his inspection of the scene. He pinpointed the origin of the fire at the same location in the basement that the statements of Torres and Velez indicate they left the unextinguished fire upon exiting the premises. Vaccariello further testified that the fire that resulted in the six deaths by asphyxiation caused by *775 smoke inhalation must have been caused by human agency, as he had excluded by the process of elimination any other possible explanation for the genesis of the fire.
Reasonable cause having been established for a finding by this court that the deaths of six occupants of 998 Intervale Avenue resulted from the defendants’ commission of the crime of arson in the second degree, it follows that reasonable cause exists for a further finding by this court that the defendants committed the crime of felony murder in six counts (Penal Law, § 125.25, subd 3; § 10.00, subd 18; § 30.00, subd 2).
The court next addresses itself to the charge of "depraved mind murder”, which is set forth in subdivision 2 of section 125.25 of the Penal Law as follows:
"§ 125.25 Murder in the second degree.
"A person is guilty of murder in the second degree when:
* * *
"2. Under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person”.
The culpable state of "recklessly” is defined in relevant part in subdivision 3 of section 15.05 of the Penal Law as follows: " 'Recklessly.’ A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such a nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.”
It has been noted that there is a shadowy distinction between the crimes of depraved mind murder and manslaughter in the second degree (see Gegan, A Case of Depraved Mind Murder, 49 St John’s L Rev 417). However, our Court of Appeals has enunciated the distinction thusly,
"A person who, 'with a depraved indifference to human life’, recklessly engages in conduct which 'creates a grave risk of death to another person’ resulting in death, also by included definition 'recklessly causes’ the death. But the murder prescription requires more than recklessly causing death * * *
"The murder definition requires conduct with 'depraved indifference’ to 'human life’, plus recklessness. This is conduct *776 of graver culpability, and it is the kind which has been rather well understood at common law to involve something more serious than mere recklessness alone which has had an incidental tragic result.” (People v Poplis, 30 NY2d 85, 88.)
Applying this standard of criminal culpability to the evidence of the actions of the defendants has brought the court to the conclusion that there is reasonable cause to believe that the defendants committed the crime of depraved mind murder in six counts.
The defendants are residents of the South Bronx. As such they are fully cognizant and acutely aware of the ever present risk of danger that a fire poses to life and property. Although evidence was submitted that indicated the intelligence of both defendants was below average, it is clear beyond any doubt that they know what fire is and the devastation that fire can bring about. The defendants were therefore fully capable of acting with the mens rea of recklessness and depravity of mind required for the commission of the crime of depraved mind murder.
An objective evaluation of the inculpatory statements made by the defendants reveals that they chose to either intentionally, or at the least, recklessly, leave a fire of their own making in close proximity to combustible matter in the basement of an inhabited dwelling at 4:00 a.m., without warning. At this hour of the night there was a virtual certainty that the occupants of the dwelling would be in deep slumber and thus extremely vulnerable to the grave risk of death in the event of a fire. The defendants realized someone could very well die if they left the fire. Yet, in spite of this knowledge, the defendants placed the lives of the occupants of this dwelling in jeopardy, indifferent as to whether they lived or died, in the absence of mitigating or even understandable motivation for their actions. Therefore, the court finds that there is reasonable cause for belief that the defendants acted with the reckless abandon and depraved indifference to human life that are the essential elements of the crime of depraved mind murder (see People v Kibbe, 35 NY2d 407).
Since the court has found reasonable cause to believe the defendants have committed the crimes of murder in the second degree on the theories of felony murder and depraved mind murder, the court must hold this case for the action of the Grand Jury, unless the District Attorney consents to a removal to the Family Court. The District Attorney having *777 made his continued unalterable opposition to removal known to this court, after what was revealed on the hearing on the critical factors, it is unnecessary at this time for the court to discuss its considerations on the question of a transferral of the matter to Family Court on the inquiry held herein.
Based on the foregoing reasons, the case is held for the action of the Grand Jury.

. Defense counsel’s contention that the defendants’ entry into the basement of 998 Intervale Avenue does not constitute entry into a dwelling within the meaning of section 140.30 of the Penal Law is without merit. The term "dwelling” for purposes of article 140 is defined in subdivision 3 of section 140.00 of the Penal Law as "a building which is usually occupied by a person lodging therein at night.” As pointed out by the Practice Commentary to this section, "This formulation is a restatement of the definition of 'dwelling-house’ in the former Penal Law (§400).” (Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 140.00, p 13.) The following definition of "dwelling house” appears in subdivision 4 of section 400 of the Penal Law of 1909 as amended by chapter 84 of the Laws of 1953: "A building, any part of which is usually occupied by a person lodgning therein at night, is, for the purposes of this article, deemed a dwelling-house” (emphasis supplied). (See People v Orcutt, 1 Parker Cr Rep 252.)

. Section 1044 of the Penal Law of 1909 provided, in relevant part: "The killing of a human being, unless it is excusable or justifiable, is murder in the first degree, when committed: * * * without a design to effect death, by a person engaged in the commission of, or in an attempt to commit a felony, either upon or affecting the person killed or otherwise”.

. See Hechtman Practice Commentaries (McKinney’s Cons Laws of NY, Book 39, Penal Law, § 125.25, pp 400-401).