Jasen, J.
Appellant Philip Rastelli was charged with organizing and financing a criminal usury enterprise in Suffolk County, while his four codefendants and coconspirators, who are not involved in this appeal, committed the substantive crimes. The People’s case centered around William Murray, a former bail bondsman who himself was separately charged with larceny, forgery and perjury for acts which were not connected with these alleged usurious loan transactions.
Murray testified that in September, 1970 he needed money to prevent a foreclosure on his home and to meet certain insurance premium payments. He, therefore, sought a loan for $5,000 from codefendant Joe Lombardi. Lombardi could not produce that amount himself, but he telephoned codefendants Frank Andosca and Tony Di Gregario, who arranged to have codefendant Thomas Sala make a partial loan of $1,500. When Sala presented Murray with the $1,500, he explained that the interest rate would be 3% of the $5,000, or $150, per week. Sala stated that these weekly payments were only interest and would not reduce the loan principal, and that the principal had to be repaid in units of $500. Murray signed a promissory note for the $1,500, but the payee and the interest rate were left blank. As security for the loan, Murray signed the back of his automobile registration and gave it to Sala. Arrangements were made to deliver the remaining $3,500 three days later.
On the day agreed upon, Sala drove Murray and Lombardi to a night club in Queens. There Murray was introduced to Andosca and "Rusty” Rastelli, the appellant herein. Rastelli revealed that Di Gregario had spoken to him about a loan to Murray and recommended Murray highly. Andosca asked Murray if Sala had explained what payments would have to be made. Appellant, referring to the automobile registration, told Murray that there was no need for collateral and that these papers would be returned to him. Appellant later took an envelope from his coat pocket, stated it was the remainder of the loan, and handed it to Andosca, who turned it over to *243 Sala. This meeting, which had lasted nearly three hours, ended when appellant stated, "[l]et’s give the kid his money and get out of here. It’s getting late.” Once outside, Sala handed Murray the envelope which, upon later inspection, proved to contain $3,500 in cash.
Thereafter, for a period of four or five months, Murray faithfully made his weekly payments of $150. When the weekly payments became more than he could handle, he sought out Lombardi for some relief. Murray was told that he would "look good as far as the rest of the boys are concerned” if he referred potential borrowers to Lombardi and the others. Murray was informed that these loans would be made at 4% weekly interest, 1% to be split between Lombardi and Di Gregario, 1% split between Andosco and Sala, and 2% to Rastelli "because it’s his money.” Murray first put Dan Richert in touch with Lombardi. Richert received a loan of $1,000 at 4% per week. In January, 1971 Murray recommended Harold and Arthur Scott to Lombardi, Andosca, Di Gregario and Sala. The Scotts were initially loaned $2,000 at 4% per week, and later an additional $1,000 at 3%. That same month he also recommended Murray Bogatin. Bogatin borrowed $3,-000 at 4% weekly. In February, 1971 Murray recommended Richard Brightman for a loan. He borrowed $1,000, also at 4% weekly. Additionally, Louis Brightbach testified that he borrowed $2,000 from Sala at the same rate. Similarly, James Lemanski testified that he borrowed $500 from Lombardi at 4% weekly.
During the months of March to July, 1971 Suffolk County detectives equipped Murray with a tape recorder and later a transmitting device. Tapes and transcripts which were made of conversations between Murray and the codefendants contained numerous statements by all the codefendants, implicating not only each of them but also Rastelli. No tapes or transcripts were made of any conversations Murray had with Rastelli.
Upon this evidence, the appellant was convicted of the crimes of conspiracy in the third degree and seven felony counts of criminal usury.
On this appeal, appellant contends that the evidence was insufficient as a matter of law to sustain his conviction. The evidence at trial, believed by the jury, established appellant as the organizer and financier of the enterprise. Appellant was not only named by his coconspirators in the course of and in *244 furtherance of the conspiracy, but he was also shown to be a direct participant in at least the loan to Murray. We conclude that the evidence was sufficient as a matter of law to sustain the conviction for conspiracy and usury (cf. People v Colascione, 22 NY2d 65, 74-75), and demonstrates the required nexus between the appellant’s acts, the conspiracy and the substantive offenses.
The other principal issue raised in this appeal is whether appellant was denied his Sixth Amendment right of confrontation with respect to Murray’s testimony as to conversations Murray had with appellant’s codefendants.
It has long been the law in New York that the acts and declarations of one coconspirator which occur while the conspiracy is in progress and which are in furtherance of the common scheme are admissible and provable as to all other cdconspirators as part of the res gestae and as a recognized exception to the hearsay rule. (People v Luciano, 277 NY 348, 358; People v McKane, 143 NY 455, 470; see, also, McCormick, Handbook of the Law of Evidence [2d ed], § 267, p 645; Richardson, Evidence [10th ed], § 244, p 214.) Nevertheless, the appellant contends, with particular reliance upon Bruton v United States (391 US 123), that this rule denies him the opportunity to confront his coconspirators who made the statements and is, therefore, violative of the Sixth Amendment.
In Bruton, the Supreme Court held that, in a joint trial, the admission into evidence of a codefendant’s confession implicating another codefendant violated that other codefendant’s right of cross-examination secured by the confrontation clause of the Sixth Amendment. As to the codefendant who was implicated by the confession in that case, the confession challenged was clearly hearsay. In Bruton, however, the Supreme Court specifically stated that it was not expressing any view as to recognized exceptions to the hearsay rule. (Bruton v United States, 391 US 123, 128, n 3, supra.) More recently, in Dutton v Evans (400 US 74), that court did pass on a question similar to the one now before us. Dutton involved a Georgia statute, broader in scope than our coconspirator rule, specifically permitting, once the fact of conspiracy had been proved, a declaration by one of the coconspirators during the pendency of the criminal project to' be admitted against all coconspirators. The Supreme Court (p 80) held that the Georgia statute did not violate the confrontation clause. In uphold *245 ing the constitutional validity of the Georgia statute, the plurality opinion of the Supreme Court also indicated that it did "not question the validity of the coconspirator exception applied in the federal courts.” This general principle would seem to apply here.
The order of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
Order affirmed.