THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
MATTHEW SALKO, Appellant.

First Department, January 12, 1978

#### APPEARANCES OF COUNSEL

*Roger Bennet Adler* of counsel *(Frieda S. Nisnewitz* with
him on the brief; *Gustave H. Newman,* attorney), for appel-
lant.

*Jane Deutscher* of counsel *(Peter L. Zimroth* with her on the
brief; *Robert M. Morgenthau, District Attorney),* for respon-
dent.

#### OPINION OF THE COURT

MURPHY, P. J.

After a jury trial, defendant Salko was convicted of the
crimes of (1) conspiracy in the third degree (Penal Law,
§ 105.05), (2) bribery (Penal Law, former § 200.00), and (3)
bribing a witness (Penal Law, § 215.00). For purposes of this

appeal, it is necessary to explore, at some length, the operative facts underlying defendant's conviction.

On August 25, 1971, Police Officer Galvin arrested an individual named Ware for possession of heroin. Ware was arraigned on August 26, 1971. At the arraignment, Ware was represented by an attorney named Lindenhauer. However, the notice of appearance read "N.H. Lindenhauer by Mr. Salko". Max Fruchtman, Lindenhauer's partner, believed that the notice indicated that the defendant would appear at the arraignment if Lindenhauer was unavailable. The defendant told Assistant District Attorney Rogers that he did go to Ware's arraignment but a Legal Aid attorney testified that he did not remember if the defendant was present.

On September 7, 1971, Galvin went to court to advise the prosecutor that the drug reports were not completed and that an adjournment of the felony hearing should be requested. At that time, Lindenhauer approached Galvin and wrote in his date book: "An arrangement can be made if its agreeable to you." Galvin nodded in the affirmative. Lindenhauer then wrote "four figures". A short time later, Lindenhauer offered to pay $1,500 to Galvin for giving false testimony at Ware's hearing. Lindenhauer also told Galvin that Ware was a "nice guy" and that the defendant had stated that he (Galvin) was a "good guy". In the lobby of the courthouse, Galvin, Lindenhauer and Fruchtman encountered the defendant. In a private conversation that ensued with Galvin, the defendant allegedly stated that the police officer should have asked for double the amount that Lindenhauer had offered.

Galvin immediately informed the District Attorney's office and the Internal Affairs Division of the Police Department of this attempted bribe. On September 10, 1971, the adjourned date of the felony hearing, Galvin had been fitted with a transmitter and a recorder. Thus, his conversation with Lindenhauer in the courthouse corridor was fully recorded. During that conversation, Lindenhauer wrote a series of 14 notes to Galvin in furtherance of his attempt to bribe the officer. In one note, Lindenhauer suggested that Galvin check him (Lindenhauer) out with the defendant. In another note, Lindenhauer agreed to let the defendant hold the $1,500 bribe until Galvin's testimony was completed. Eventually, Lindenhauer passed the bribe to Galvin and, upon the officer's signal, Lindenhauer was arrested by his back-up team.

Thereafter, the defendant was arrested and brought before

Assistant District Attorney Rogers. The defendant admitted that he knew Lindenhauer wished to bribe Galvin. Likewise, he conceded that he had agreed to "check out" Galvin. He also acknowledged, before Rogers, that he had told Galvin to double his payment. The defendant denied that he had received any money as part of the bribery scheme but he did state that he might receive $50 for the "whole thing". Assistant District Attorney Rogers never asked, with specificity, why the defendant might receive the $50. Prior to defendant Salko's trial, Lindenhauer died. At trial, it was stipulated that, if Lindenhauer were alive, he would testify that Salko was completely blameless of any action concerning this matter. It was further stipulated that Lindenhauer had been convicted of giving a bribe to Galvin. Lastly, it was agreed that, if Ware testified, he would aver that he did not know defendant Salko and that, on September 10, 1971, he gave Lindenhauer $1,810.

Of the various points raised in defendant's brief, only two merit discussion. First of all, the defendant contends that the trial court erroneously invoked the coconspirator exception to the hearsay rule. Consequently, the defendant maintains that the trial court should not have admitted into evidence against him (1) Galvin's unrecorded conversations with Lindenhauer, (2) Galvin's recorded conversations with Lindenhauer, and (3) Lindenhauer's notes (7 of 14 recovered) written to Galvin on September 10, 1971. It is defendant's prime contention that the three items of evidence, set forth above, are admissions by Lindenhauer that should not have been used against him.

Generally, an admission by one defendant is not admissible against a codefendant. *(People v Payne,* 35 NY2d 22, 27; Richardson Evidence [10th ed], § 232, p 206.) However, it has long been the law in New York that the acts and declarations of one coconspirator which occur while the conspiracy is in progress and which are in furtherance of the common scheme are admissible and are provable as to all other coconspirators as part of the *res gestae* and as a recognized exception to the hearsay rule. *(People v Rastelli,* 37 NY2d 240, 244.) A party, seeking to fall within this coconspirator exception to the hearsay rule, must come forward with prima facie evidence that there is a conspiracy and that a particular defendant is a coconspirator. *(Voisin v Commercial Mut. Ins. Co.,* 60 App Div 139, 149.) A conspiracy may be established by circumstantial evidence *(People v Van Tassel,* 156 NY 561, 564), but the

declarations of an alleged coconspirator cannot be received for the purpose of proving the conspiracy *(Lent v Shear,* 160 NY 462, 468).

In this proceeding, Lindenhauer's notes, his recorded and unrecorded conversations with Officer Galvin are inadmissible against the defendant until the prosecution has made a prima facie showing of a conspiracy between the defendant and Lindenhauer to bribe Galvin. Moreover, that evidentiary data cannot be used to prove the existence of a conspiracy. *(Lent v Shear, supra.)* The fact of a conspiracy must be established from independent evidence in the record. More specifically, in the factual circumstances of this case, the conspiracy must be proven, if at all through the testimony of Officer Galvin and Assistant District Attorney Rogers.

In the testimony of both Galvin and Rogers, we find an open concession from the defendant that he "checked out" Galvin to determine whether he was receptive to a bribe. There is no real dispute that the defendant also apprised both Galvin and Rogers of Lindenhauer's prior bribery activity in the courts. In fact, the defendant suggested that Galvin ask for double the amount ($1,500) which had been offered to him by Lindenhauer. The defendant explicitly denied, before Rogers, that he was involved in any bribery scheme and he emphasized that he might have received $50 for the "whole thing".

In defendant's statements to Galvin and Rogers, there is no mention that he had entered into any agreement with Lindenhauer to bribe Galvin (Penal Law, § 105.05). The most damaging evidence would seem to be his ambiguous admission that he might receive $50 for the "whole thing". Since Rogers did not question the defendant any further concerning the possible payment, it is impossible to determine whether the money was to be paid for (1) defendant's total involvement in a bribery scheme, or (2) his possible criminal facilitation of the bribery scheme (Penal Law, § 115.00), or (3) his services in being available, if not actually present, at Ware's arraignment. Under a view of the testimony most favorable to the defendant, his allusion to the possible receipt of a $50 remuneration could well have been made with regard to his legitimate fee for being available at Ware's arraignment. This highly ambiguous remark of the defendant can thus be interpreted as being consistent with innocent conduct on his part. Hence, this particular piece of circumstantial evidence cannot serve as a predicate for finding him to be a coconspirator.

*(People v Williams,* 35 NY2d 783; cf. *People v Weiss,* 290 NY 160, 163.)

In the *Rastelli* case (37 NY2d 240, *supra),* that defendant was directly named at trial as a conspirator by his coconspirators. Likewise, the independent evidence indicated that Rastelli was a direct participant in the criminal usury conspiracy. There is no direct testimony herein either linking the defendant with the alleged conspiracy or with the bribe offered to Galvin. Upon the independent evidence adduced at this trial, a prima facie demonstration was not made that the defendant was engaged in a conspiracy with Lindenhauer to bribe Galvin. Hence, the tapes and the other admissions of Lindenhauer should not have been received against the defendant.

The second question reached on appeal is whether, in the absence of Lindenhauer's admissions, there was sufficient evidence in the record to convict the defendant on any one of the three counts.

Conspiracy in the third degree is defined as follows (Penal Law, § 105.05): "A person is guilty of conspiracy in the third degree when, with intent that conduct constituting a felony be performed, he agrees with one or more persons to engage in or cause the performance of such conduct." As was discussed above, the testimony of Galvin and Rogers, relating to their direct conversations with the defendant, fails to reveal any "agreement" between the defendant and Lindenhauer to bribe Galvin. Moreover, their testimony does not show that the defendant ever "intended" that Galvin be bribed. Therefore, the prosecution wholly failed to establish the two major elements in the crime of conspiracy, namely, (1) an agreement between the defendant and Lindenhauer to bribe Galvin and (2) the defendant's criminal intention that Galvin be bribed. With regard to the crimes of bribery (Penal Law, former § 200.00) and bribing a witness (Penal Law, § 215.00), let it merely be reiterated that the record is devoid of any evidence that defendant conferred, offered or agreed to confer any benefit upon Galvin to affect his testimony.

It may well be that the defendant should have been convicted of criminal facilitation (Penal Law, § 115.00) in aiding Lindenhauer in his attempt to bribe Galvin. However, that issue is not before this court.

Since the quantum of proof is insufficient to prove defendant's guilt beyond a reasonable doubt on any one of the three charges, the judgment of conviction, Supreme Court, New

York County (ROSENBERGER, J.), rendered April 11, 1975, convicting him after a jury trial of (1) conspiracy in the third degree (Penal Law, § 105.05), (2) bribery (Penal Law, former § 200.00), and (3) bribing a witness (Penal Law, § 215.00), should be reversed, on the law, and these three counts should be dismissed.

LUPIANO, J. (concurring). The conviction of conspiracy to bribe a witness and for bribery cannot stand on the facts herein. The facts do not support the necessary predicate that Salko and Lindenhauer entered into an agreement to bribe Galvin. Because of Lindenhauer's death, the evidence to support such a finding had to come through Galvin's testimony. There was, therefore, no direct evidence of an illicit agreement. However, the District Attorney sought to establish that agreement through circumstantial evidence, namely, Galvin's testimony as to his separate conversations with Lindenhauer and Salko supported by the recordings and Lindenhauer's retrieved notes, plus such admissions as were attributed to Salko.

Although conspiracy can be proven by circumstantial evidence, the inference to be drawn from such evidence must be conclusive. There are numerous authorities to support the proposition. "In such circumstances, the facts from which the inferences are to be drawn must be established by direct proof: the inferences may not be based upon conjecture, supposition, suggestion, speculation or upon other inferences; the conclusion sought must flow naturally from the proven facts and be consistent with them all; the proven facts must exclude to a moral certainty every hypothesis except that of guilt or of the offense charged and not alone must all the proven facts be consistent with and point to guilt, but they must be inconsistent with innocence [citing cases]." *(People v Weiss,* 290 NY 160, 163.)

The jury was asked to find as a fact from the circumstances herein that Salko entered into an agreement with Lindenhauer to bribe Galvin. While it might be said that Salko "facilitated the crime" (Penal Law, art 115), such evidence does not possess all the ingredients necessary to establish an "agreement" between Salko and Lindenhauer to bribe a witness.

If conspiracy counts are dismissed, then, as Presiding Justice MURPHY states, the bribery counts must fall. In my view, the conspiracy counts and bribery counts are inextricably

interwoven. Putting it differently, had the conspiracy been established, the jury could properly consider Galvin's conversations and activities with Lindenhauer as bearing on the question of Salko's guilt or innocence with respect to each and every count charged in the indictment, but since the conspiracy conviction must be reversed, it is necessary to re-examine the bribery counts and measure the sufficiency of each of the convictions thereunder in terms of the evidence which could then properly be considered by the jury.

As to the bribery counts: Galvin testified that he was offered money by Lindenhauer on September 7; that he received $1,500 from Lindenhauer on September 10. In these circumstances, the crimes of bribery and bribing a witness would be, as Justice Silverman correctly points out, a continuing one, because Lindenhauer would have been looking for favorable testimony from Galvin so as to secure Ware's acquittal. In those circumstances, there would be no question that Salko's conversation with Galvin on September 7 at Lindenhauer's request could be properly construed as accessorial conduct under section 20.00 of the Penal Law. Salko could then have been found to have intended to assist Lindenhauer in the commission of the said crimes.

But the dismissal of the conspiracy counts compels us to disregard Galvin's testimony, vis-à-vis Lindenhauer, the recordings and other tangible evidence, and to examine the question of Salko's guilt of the bribery counts solely on the basis of Salko's conversations with Galvin and such statements as were made by Salko to Assistant District Attorney Rogers.

With the evidence so limited, I am unable to say that the "corpus" of the crimes of bribery and bribing a witness were established. Certainly the mere conversations between Galvin and Salko do not go that far. Beyond any doubt on this evidence, Salko was guilty of grossly unprofessional conduct but we may not extend the sanctions of criminal law to cover every charge of unprofessional behavior.

SILVERMAN, J. (dissenting in part). I would affirm the conviction as to the substantive bribery counts (Penal Law, §§ 200.00, 215.00), on the theory that defendant was aiding and abetting the principal Lindenhauer in those crimes.

The evidence as to the conspiracy count is rather thin and I would have no particular difficulty in agreeing with the major-

ity to reverse the conviction for conspiracy. But "Aiding and abetting has a broader application. It makes a defendant a principal when he consciously shares in any criminal act whether or not there is a conspiracy. And if a conspiracy is also charged, it makes no difference so far as aiding and abetting is concerned whether the substantive offense is done pursuant to the conspiracy. *Pinkerton v. United States* is narrow in its scope. Aiding and abetting rests on a broader base; it states a rule of criminal responsibility for acts which one assists another in performing. The fact that a particular case might conceivably be submitted to the jury on either theory is irrelevant. It is sufficient if the proof adduced and the basis on which it was submitted were sufficient to support the verdict." *(Nye & Nissen v United States,* 336 US 613, 620.)

Section 20.00 of the Penal Law codifies the aiding and abetting principle. It provides in relevant part as follows: when one person [Lindenhauer] engages "in conduct which constitutes an offense, another person [defendant] is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he [defendant] * * * intentionally aids such person [Lindenhauer] to engage in such conduct."

The first requirement of this statute, that Lindenhauer engaged in bribery, is not disputed. Neither is it substantially disputed that defendant aided Lindenhauer in this criminal activity by undertaking and attempting to ascertain whether the police officer was amenable to bribery. That he did not act with complete loyalty to Lindenhauer is immaterial; "the punctilio of an honor the most sensitive" *(Meinhard v Salmon,* 249 NY 458, 464) was not said with reference to participants in a crime.

The fact that Lindenhauer's crime was technically complete even before the defendant spoke to Officer Galvin, the prospective bribee, is in my view not significant. We are not discussing here an action on an oral contract made between Galvin and Lindenhauer. "[P]rinciples of contract, evolving as they do from the commercial world, are 'inapposite to the ends of criminal justice,'" *(Palermo v Warden,* 545 F2d 286, 294). This crime was an ongoing thing; put slightly differently the "contract" was executory. Lindenhauer still had to pay the police officer; and the police officer still had to give the false testimony. Thus it was important to Lindenhauer to know whether he could rely upon the police officer to adhere to his

promise and to carry it out, and whether he could safely pay the money. Defendant aided Lindenhauer in this endeavor.

That leaves only the question of defendant's mental state. The Judge charged section 20.00 of the Penal Law, including the problems of mental state; and the jury found against defendant. In that connection, I note that the only requirement of *intent* is that the defendant "intentionally aids." Clearly defendant did intentionally aid. The other requirement of mental culpability is that defendant should have acted "with the mental culpability required for the commission" of the substantive offenses of bribery. But the substantive offenses of bribery do not contain any requirement of any particular culpable mental state. (Penal Law, §§ 200.00, 215.00.) In such cases, section 15.10 of the Penal Law makes the minimal requirement for criminal liability that the defendant should have acted voluntarily. But subdivision 2 of section 15.15 indicates that in general the statutes should be construed as defining a crime of mental culpability. I would think that the fact the defendant acted "knowingly" would quite satisfy that requirement. (Cf. Penal Law, § 15.05, subd 2.)

It is particularly with respect to the required mental culpability that the showing of defendant's guilt of conspiracy is much weaker than the showing of his guilt of the substantive crimes of bribery on the aiding and abetting theory. For conspiracy, unlike bribery, does specifically require a particular culpable mental state, and that the most exacting one. Conspiracy requires a showing of "*intent* that conduct constituting a crime be performed" (Penal Law, § 105.00), so that conviction of conspiracy would require that defendant shall have intended that the witness be bribed. As I have indicated, such an intent is not required for guilt of the substantive crimes on the aiding and abetting theory.

With respect to the proof of guilt of the substantive crimes on the aiding and abetting theory, the extensive evidence as to Lindenhauer's activities and conversations with the Police Officer Galvin, is merely the evidence required by the first part of section 20.00 of the Penal Law, that Lindenhauer, the principal, had engaged, in conduct constituting the offense. Incidentally, as bribery essentially involves conversations and passing of money, no question of hearsay arises. The conversations are the very corpus of the crime; they are not offered for the proof of the truth of the statements therein contained,

and, indeed, most of them do not involve any statement of facts but essentially just offers and acceptance. The same applies to Lindenhauer's notes wich were not his memoranda of conversations but were themselves the written communications made to Officer Galvin as part of the offers to Galvin.

Defendant's own participation in the substantive crimes is not shown by Lindenhauer's conversations and activities but by defendant's own statements to the District Attorney and Galvin. The statement to the District Attorney was an admission of sorts. The conversation with Galvin was not an admission but was itself a participation in the crime. To the extent that we are concerned with the requirement of corroboration of the defendant's admissions, that corroboration need not be corroboration of the defendant's participation in the crime but only that "the offense charged has been committed," (CPL 60.50), i.e., that there was the bribery. And this was of course amply corroborated by all the testimony as Lindenhauer's transactions and conversations with Galvin.

By contrast, much of the proof of the existence of a conspiracy between Lindenhauer and defendant, and defendant's participation therein, has to rest on Galvin's evidence of conversations with a third person, Lindenhauer (unlike the aiding and abetting theory where the transactions with Lindenhauer are used only as constituting Lindenhauer's criminal conduct).

For these reasons, I think the jury was clearly justified in finding the defendant guilty of the substantive crimes on the aiding and abetting theory.

Nor was defendant prejudiced by the submission of the conspiracy count along with the substantive counts. For all the proof bore on the substantive counts, and were we to order a retrial only of the substantive counts, the evidence, assuming it still to be available, would be identical to the evidence introduced at this trial. The only difference would be that the Judge's charge to the jury would not submit the conspiracy count.

LYNCH, J., concurs with MURPHY, P. J.; LUPIANO, J., concurs in an opinion; SILVERMAN, J., dissents, in part, in an opinion.

Judgment, Supreme Court, New York County, rendered on April 11, 1975, reversed, on the law, and the counts of conspiracy in the third degree, bribery and bribing a witness dismissed. The matter is remitted to the trial court for the

purpose of entering an order in favor of the accused pursuant to CPL 160.50, not less than 30 days after service of the order upon the respondent, with leave during this 30-day period to respondent to move and seek any further stay of the implementation of CPL 160.50 as in the interest of justice is required.