OPINION OF THE COURT
Duncan S. McNab, J.
SUFFICIENCY OF THE EVIDENCE AT THE GRAND JURY
By separate decision of even date herewith, the court has determined that there was a good faith effort to conduct the subject eavesdropping in accord with the statutory minimization requirement, and has denied defendants’ motion to suppress the contents of the recorded conversations. The court will go still further and, in this separate decision, determine whether the evidence before the Grand Jury, which included the playing of certain portions of the recorded conversations, was legally sufficient to support the charged crimes as to each of the named defendants.
*22 CONSPIRACY
First, with respect to the alleged conspiracy, count two of the indictment charges the defendants with conspiring to murder one Ronald "Butch” Futia on the evening of November 15, 1976. In support thereof, the People introduced before the Grand Jury portions of the tape-recorded conversations overheard pursuant to the court-authorized eavesdropping, during the period January 13 to February 9, 1977, i.e., some two to three months after the murder of Butch Futia had occurred. These conversations involved, at various points, each of the four named defendants along with a variety of other individuals. The People now contend that the evidence before the Grand Jury establishes the alleged conspiracy, and that the admissions of each of these alleged coconspirators were made in the course of the conspiracy and are therefore admissible against all the others. However, for reasons of law, the court is not persuaded by the People’s contention and would find that the conspiracy count returned by the Grand Jury is fatally defective. It is beyond cavil that " '[declarations made by one conspirator in the prosecution of the enterprise are evidence against all, but they must be made in furtherance of the enterprise and while the enterprise is pending. Narration of past facts after the enterprise has come to an end by success or failure is not admissible in evidence against the others.’ ” (People v Marshall, 306 NY 223, 226; People v Vaccaro, 288 NY 170; Cohen v Toole, 184 App Div 70; and see cases cited in Richardson, Evidence [10th ed], § 244.) Moreover, beyond the fact that the tape-recorded conversations were not intercepted during the pendency of the alleged murder conspiracy, the court sees two other key problems with respect to the People’s heavy reliance on this conconspirator exception to the hearsay rule.
One, having heard the tape-recorded conversations in toto, it is evident that in January and February, 1977, the defendants and certain other individuals, were day in and day out, ad nauseam, discussing ways to conceal, or cover up, their crime by tailoring their individual stories and by "coaching” others as to what to say before the Grand Jury. The United States Supreme Court, on more than one occasion, has rejected the proposition that an agreement to conceal a conspiracy is to be deemed part of the conspiracy and serves to extend the duration of the alleged conspiracy; i.e., "after the *23 central criminal purposes of a conspiracy have been attained, a subsidiary conspiracy to conceal may not be implied from circumstantial evidence showing merely that the conspiracy was kept a secret and that the conspirators took care to cover up their crime in order to escape detection and punishment.” (Grunewald v United States, 353 US 391, 401-402; Krulewitch v United States, 336 US 440; Lutwak v United States, 344 US 604.) This is precisely the case here; certainly, the "main aim”, or "central purpose” of the charged conspiracy was accomplished with the death of "Butch” Futia. What the Grand Jury had before it, on tape, was nothing more than the conconspirators apparently collaborating with each other to prevent detection.
Secondly, and equally fundamental, there is no evidence herein, independent of the tape-recorded statements of the defendants, to show that they conspired, i.e., that they entered into an agreement to murder Futia. While a conspiracy may be established by circumstantial evidence, "the declarations of an alleged coconspirator cannot be received for the purpose of proving the conspiracy” (People v Salko, 60 AD2d 307, 309-310, citing Lent v Shear, 160 NY 462; and see Richardson, Evidence [10th ed], § 244). That is, "[t]he fact of conspiracy must be established from independent evidence in the record” (see People v Salko, supra, p 310; but see contra People v Brannon, 58 AD2d 34).
Here, the Grand Jury was informed, through the testimony of Detective William Kennedy, that codefendant Roger De Ruggiero had given a statement on December 9, 1976 that his brothers John and Dominick and nephew Stanley had been present at his (Roger’s) house on the evening in question. The Grand Jury was also informed, however, that on January 21, 1978, Roger De Ruggiero informed Detective Kennedy that he could have been mistaken in this respect; that codefendant Dominick De Ruggiero denied having been at Roger’s house that night; and that codefendant John De Ruggiero had stated that his brother Roger was "a little stupid and slow, and was more than likely mistaken.” However, even assuming arguendo that the four defendants were together on the night of the charged crime, the mere fact of a meeting, particularly as it involves four members of an apparently close-knit family, three of whom live within the City of Yonkers and the fourth in the greater Peekskill area, would certainly, in and of itself, provide no independent basis to attribute the necessary culpa *24 ble mental state to conspire, i.e., to enter an agreement to murder Futia, to any of the named defendants.*
Thus, in the absence of legally sufficient independent evidence at the Grand Jury to make out a prima facie charge of conspiracy, the conspiracy crime alleged in count two of the indictment must fall. (People v Mayo, 36 NY2d 1002.)
Finally, one additional point re conspiracy is in order; namely, that while only codefendant Stanley ("Skootch”) De Ruggiero has made a written motion to dismiss the indictment on grounds of insufficiency, the court would note that Mr. Vincent Lanna, counsel for Dominick ("Beers”) and Roger De Ruggiero, has orally joined in that motion; further, having found the evidence to be legally insufficient to support the alleged conspiracy count, the court, in the interests of justice, would dismiss the afore-mentioned second count of the indictment as to each and every one of the four named codefendants.
SUFFICIENCY OF THE REMAINING COUNTS
Defendants next contend that the introduction of portions of the tape-recorded conversations into evidence at the Grand Jury, if inadmissible re the conspiracy count, would also serve to taint the remaining counts of the indictment, including the count of murder. The court does not feel constrained, however, to draw this additional legal conclusion.
It is well settled that "the submission of some inadmissible evidence during the course of this [Grand Jury] proceeding is held to be fatal only when the remaining legal evidence is insufficient to sustain the indictment” (People v Avant, 33 NY2d 265, 271); moreover, there can be no question that a conspiracy to murder and the substantive crime of murder are separate and distinct offenses. (See People v Smith, 61 AD2d 91, 96, and cases cited therein.) Thus, the instant dismissal of the conspiracy crime charged in count two of the indictment does not bar the People from going forward, on a theory of accessorial liability under section 20.00 of the Penal Law, on the murder count. Here, the court would find that the remaining three counts of the indictment were supported by legally *25 sufficient evidence. The tape-recorded conversations of the defendants, while inadmissible for purposes of proving conspiracy, were admissible for purposes of proving that the defendants, aiding and abetting each other and acting in concert, committed each of the other crimes charged, as the People have argued herein. In the course of attempting to conceal the charged crime, defendants engaged in a multitude of conversations, any number of which could well show a consciousness of guilt or form a predicate for such uncharged crimes as perjury, subornation of perjury or obstruction of governmental administration. Without looking to the coconspirator exception to the hearsay rule to attribute the incriminating remarks of one defendant to any of the others, the court feels that the statements of each defendant are admissible vis-árvis the individual declaran t, under the theory of People v Molineux (168 NY 264) to show that each defendant acted in concert with the others, and to show the motive and intent of each named defendant; and see People v Jackson (39 NY2d 64), wherein the trial court’s ruling, admitting testimony of uncharged narcotics sales under Molineux to show acting in concert, was sustained on appeal; see, also, opinion of Silver-man, J., dissenting on other grounds in People v Salko (60 AD2d 307, supra) wherein he notes that aiding and abetting has a broader application than conspiracy, for while conspiracy requires a showing of a most exacting culpable mental state, i.e., an intent to commit a specific crime, coupled with an agreement between two or more persons to engage in the specified conduct, ascribing criminal liability via a theory of aiding and abetting, as codified by section 20.00 of the Penal Law, requires only that a defendant "intentionally aid” in the commission of the charged crime. Here, particularly where the Grand Jury, in addition to receiving instructions on the elements of the substantive crimes charged, was also charged as to the principles of accessorial liability under section 20.00 of the Penal Law, the court would find that there was legally sufficient evidence, as to each named defendant, with respect to the remaining three counts of murder in the second degree, unauthorized use of a vehicle, and criminal possession of a weapon in the fourth degree, by way of acting in concert; and as to these three latter counts, the defense motion to dismiss for insufficient evidence is denied.

 Moreover, even if the People had arguendo submitted legally sufficient independent proof of conspiracy at the Grand Jury, the court would not have permitted the People at trial to invoke the coconspirator exception to the hearsay rule for those ' reasons discussed earlier.