(January 4, 1979)

■     THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RONALD BERKOWITZ, Appellant.—Judgment of conviction of conspiracy, first degree, rendered May 19, 1977, Supreme Court, New York County, reversed, on the law, and the indictment dismissed. This case is reminiscent of *People v Salko* (60 AD2d 307), in that, although there is a great deal of smoke in the form of surmise, suspicion and speculation, there is no solid evidence connecting defendant with the conspiracy of which he stands convicted. The evidence against defendant was entirely circumstantial, which factor is not in itself an obstacle to its use as a basis for operative fact. It did not, however, comply with standard tests for its use. "Although conspiracy can be proven by circumstantial evidence, the inference to be drawn from such evidence must be conclusive. There are numerous authorities to support the proposition. 'In such circumstances, the facts from which the inferences are to be drawn must be established by direct proof: the inferences may not be based upon conjecture, supposition, suggestion, speculation or upon other inferences; the conclusion sought must flow naturally from the proven facts and be consistent with them all; the proven facts must exclude to a moral certainty every hypothesis except that of guilt or of the offense charged and not alone must all the proven facts be consistent with and point to guilt, but they must be inconsistent with innocence [citing cases].' *(People v Weiss,* 290 NY 160, 163.)" *(Salko, supra,* p 312, Lupiano, J.) "Generally, an admission by one defendant is not admissible against a codefendant. *(People v Payne,* 35 NY2d 22, 27; Richardson Evidence [10th ed], § 232, p 206.) However, it has long been the law in New York that the acts and declarations of one coconspirator which occur while the conspiracy is in progress and which are in furtherance of the common scheme are admissible and are provable as to all other coconspirators as part of the *res gestae* and as a recognized ' exception to the hearsay rule. *(People v Rastelli,* 37 NY2d 240, 244.) A party, seeking to fall within this coconspirator exception to the hearsay rule, must come forward with prima facie evidence that there is a conspiracy and that a particular defendant is a coconspirator. *(Voisin v Commercial Mut. Ins. Co.,* 60 App Div 139, 149.) A conspiracy may be established by circumstantial evidence *(People v Van Tassel,* 156 NY 561, 564), but the declarations of an alleged coconspirator cannot be received for the purpose of proving the conspiracy *(Lent v Shear,* 160 NY 462, 468)." *(Salko, supra,* pp 309-310, Murphy, P. J.) Thus, in this case, the statements of alleged coconspirator Alvarez are not to be used against this defendant-appellant. It

was never established that a conspiracy existed between defendant and his "girl friend" Alvarez to engage in traffic in contraband. Unfortunately, respondent's presentation on this score consists of a "bootstrap" argument to the effect that Alvarez made statements implicating defendant in a conspiracy with her; since they were coconspirators, the statements made by her and the acts performed by her were in furtherance of the conspiracy and binding on him. The most solid pieces of nonhearsay evidence linking the two were his presence in her apartment on December 13 and the fact that, when arrested, they gave the same address. Both these pieces of evidence were equivocal. And, unless one swallows whole the police officer's "interpretation" of his recorded phone conversation with defendant, there is no other connecting evidence. Of the six overt acts stated in the indictment to have been in furtherance of the conspiracy, four were alleged to have been performed by Alvarez; as to the other two, said to have been performed by defendant, the evidence is at best equivocal. The evidence involving defendant, given by an undercover policeman, stated briefly, was that defendant was introduced to the officer by an informant, never produced as a witness,[*] and that an appointment was set up for an unstated purpose, both the time and place of which were changed by phone conversations between the informant and defendant. The content as well as the identity of the other participant in the conversation were pure hearsay in the circumstances. In any event, the officer and the informant encountered Alvarez on the street, and went, at her suggestion, to her apartment, where the three waited in the living room. Any statement by Alvarez concerning defendant, in his absence, would also have been hearsay, and there was nothing of consequence, either by him or her, said later. Defendant entered, saw and was seen by the officer, and, without comment, went to a rear room where Alvarez joined him. The two then called in the informant. Defendant was not seen further that day, but Alvarez emerged shortly with a package, later found to contain cocaine, which she gave to the officer and then returned to the bedroom. She soon came out, and stated the price. There was no evidence that defendant had done or said anything to incriminate him. The other involvement of defendant with the officer witness was a telephone conversation between them, taped by the officer, which is replete with vague references to a meeting for luncheon to be had between them, and talk about the attempts of both participants to communicate with either Alvarez or the informant. Although the officer was permitted to "interpret" the conversation, carried on in what the prosecutor terms "drug jargon," it is obvious that its content, as recorded, is as consistent with innocence as with guilt. Thus, no prima facie of conspiracy having been established, defendant was entitled to acquittal. Concur—Murphy, P. J., Evans and Markewich, JJ.

Lupiano and Sullivan, JJ., dissent in a memorandum by Lupiano, J., as follows: The critical issue on this appeal is whether defendant was proven guilty of conspiracy beyond a reasonable doubt. Evidence against the defendant, circumstantial in nature, involved events that occurred in the informant Stark's apartment and in the Alvarez apartment on December 13, 1974 and the taped telephone conversation between defendant and Robert Wainen, an undercover Newark detective, which occurred on December 24,

---

[*] Alvarez' conviction at a separate trial, not of conspiracy but of sale of contraband, was reversed (65 AD2d 146) because of failure to produce the informant as a witness at her trial. These factors play no part in the disposition here.

1974. On December 13, 1974, arrangements had been made for the undercover detective to be introduced to defendant for the purpose of buying narcotics from the latter. The introduction was to be made by Jason Stark, a confidential informant, and the sale was to take place at Stark's apartment located in Manhattan. At 12:15 P.M. on that day, the detective arrived at Stark's apartment. Defendant did not appear at 12:30 P.M. as planned. At 1:00 P.M. defendant made a telephone call to Stark *(which the detective listened to)* and defendant postponed the meeting until 2:30 P.M. (The undercover officer was permitted to testify to this conversation with defendant on the basis of the officer's subsequent attainment of familiarity with defendant's voice and consequent ability to identify defendant as the party who called Stark). Again, defendant did not appear as scheduled, but a second telephone call at 3:00 P.M. caused the informant *to* tell the detective that the meeting place had been changed to 33rd Street and Third Avenue in Manhattan. (The officer did not listen to this second conversation.) Wainen and Stark went to a corner at 33rd Street and Third Avenue and were greeted by Diane Alvarez, a girlfriend of defendant who requested that they wait while she collected her laundry. When she returned, she was introduced to Wainen and suggested that they go to her apartment. In response to Wainen's inquiry as to "why there was a change and what was the problem," Alvarez replied that "her boyfriend Ronnie [defendant] had become paranoid and that is why he made the change." Alvarez assured the detective that only the three of them and her boyfriend (the defendant) would be in the apartment. The three entered the apartment and sat down in the living room. Five minutes later defendant entered, looked briefly at the undercover detective and went immediately to a back bedroom which was out of the officer's view. A few minutes later, the *defendant and Alvarez* called the informant into the bedroom, leaving the detective alone in the living room. Two or three minutes later, Alvarez returned and gave the officer a plastic bag containing slightly less than one ounce of cocaine and went back to the bedroom. A few minutes later, Alvarez came back into the living room and asked Wainen for $2,200 for the drugs, which he gave her. The detective and the informant left the apartment. Eleven days later, on December 24, 1974, Detective Wainen taped a telephone conversation he had with defendant which was admitted into evidence. Portions of the conversation in drug jargon were explained by the detective. Defendant in the course of that conversation identified himself, and in response to Wainen's request for a Friday appointment, volunteered that such date "might be too late as that, ah, for *that same thing*" (emphasis supplied). Wainen then indicated that he wanted to discuss "something different * * * bigger" and defendant responded, "Right." This conversation, viewed not in a vacuum but in relation to the totality of the evidence, clearly indicates reference to the prior sale on December 13 and defendant's knowledge of and complicity in same. Study of *all* the events of December 13 and their relationship to the December 24 telephone conversation, in light of the jury's finding defendant guilty of conspiracy in the first degree, does not justify this court in declaring that the jury could not, as reasonable men, find defendant guilty of conspiracy on such evidence. Clearly, the court will not lightly strike down a verdict. "The People's proof at trial was largely, if not totally, circumstantial. The issue of ultimate fact in such cases is whether the evidence *logically* points to the defendants' guilt and excludes, to a moral certainty, every other reasonable hypothesis *(People v Cleague,* 22 NY2d 363, 365-366; *People v Eckert,* 2 NY2d 126, 129; *People v Harris,* 136 NY 423, 446-447). This issue was properly and fully framed for the jury

by the trial court in its charge. On appeal from such a verdict *the reviewing court need not be convinced to an absolute certainty that there exists no hypotheses consistent with defendants' innocence in order to sustain the conviction thereon (People v Regina,* 19 NY2d 65, 73-74; *People v Harris,* 306 NY 345, 351). Rather, it is enough if the circumstantial evidence is 'direct, substantial and unequivocal' *(People v Regina, supra,* p 72) and the inferences of guilt to be drawn from the circumstances, as opposed to mere suspicions, are 'logically compelling' *(People v Cleague, supra,* p 367)." *(People v Gross,* 51 AD2d 191, 193; emphasis supplied). The defense called no witnesses and did not raise a defense as, for example, entrapment. Accordingly, defendant's main contentions on appeal are that the prosecution's evidence of conspiracy is insufficient and that the acquittal of Berkowitz' coconspirator, Diane Alvarez, on the conspiracy count in her separate trial leaves him as the sole conspirator and his conviction may not stand. While the acquittal of one coconspirator may compel the acquittal of another coconspirator at their *joint trial* under certain circumstances (cf. *People v Kuland,* 266 NY 1; *People v Bauer,* 32 AD2d 463; *People v Chaplin,* 8 AD2d 286), this rule has no application where *separate trials* are held (see *United States v Musgrave,* 483 F2d 327, cert den 414 US 1023; *People v Superior Ct.,* 44 Cal App 3d 494; *People v Holzer,* 25 Cal App 3d 456; *Platt v State of Nebraska,* 143 Neb 131). Patently, the evidence at defendant's trial differed substantially from that at the separate trial of Alvarez. Unlike a situation in a joint trial, where failure of proof as to one conspirator would amount to failure of proof as to both, in consecutive trials the acquittal of the conspirator in one trial amounts to no more than failure of proof as to him. As aptly noted by Justice Carter in his persuasive reasoning in *Platt v State, (supra,* p 142): "We think that the verdict of a jury on a *separate* trial, finding one of two persons charged with conspiracy to be guilty, concludes also the guilt of the other *for the purposes of that trial,* otherwise no conviction could have been had. The guilt of the codefendant was found as against the convicted defendant. This element of the crime having been established as against the convicted defendant, the crime was complete and the conviction final as to him, irrespective of what some other jury on *different evidence* might decide. The rule cannot logically be otherwise. *The * * * acquittal of the other necessarily amounts to no more than that there was a failure of proof as to him.* But if they were tried together, a failure of proof as to one would amount to a failure of proof as to both because the evidence was the same. It seems to us that reason and sound logic do not support the rule where one of two conspirators is convicted in *a separate trial,* that he shall be discharged because the second may be acquitted for a multitude of reasons having nothing to do with his guilt" (emphasis supplied). Of critical import is the fact that Wainen was properly permitted to testify to the telephone conversation he overheard between defendant and the informant in which defendant postponed the meeting to a few hours later. This casts the subsequent arrival of defendant at the Alvarez apartment where Wainen was waiting in an entirely different light, i.e., the arrival was not accidental, but planned. Further, the statements uttered by Alvarez, the coconspirator, to Wainen to the effect that "her boyfriend Ronnie [defendant] had become paranoid and that is why he made the change" and her assurance that only herself, Jason Stark (the confidential informant), Wainen *and* defendant would be in her apartment, patently indicate that defendant's arrival at the Alvarez apartment was pursuant to a common plan. The fact that nothing happened in the Alvarez apartment until defendant appeared and the fact that the sale occurred immediately

after Alvarez joined defendant in the back bedroom, obtain great relevance in conjunction with the circumstance that the meeting was set up with defendant's involvement. Further, the nature of the taped conversation between defendant and Wainen, the undercover detective, which contains reference by defendant to Alvarez, viewed in context with the other circumstances, clearly demonstrates the elements of a conspiracy involving defendant and Alvarez. "It has long been the law in New York that the acts and declarations of one coconspirator which occur while the conspiracy is in progress and which are in furtherance of the common scheme are admissible and provable as to all other coconspirators as part of the *res gestae* and as a recognized exception to the hearsay rule" *(People v Rastelli,* 37 NY2d 240, 244, cert den 423 US 995; see, also, *United States v Sansone,* 231 F2d 887). Finally, it is for *the jury* to determine if the circumstances exclude, to a moral certainty, every other "reasonable" hypothesis consistent with defendant's innocence beyond a reasonable doubt. If there is a fair conflict in the evidence such that different inferences can properly be drawn from it, the determination of the jury will not be set aside unless it is clearly against the weight of the evidence or appears to have been influenced by passion, prejudice, mistake or corruption *(People v Robertson,* 61 AD2d 600, 609-610, citing *People v Cohen,* 223 NY 406, 422-423). On this record, the circumstantial evidence, viewed in its entirety with reason and common sense employed under the guidance of established legal principles governing appellate review, mandates an affirmance.