OPINION OF THE COURT
Mark Dwyer, J.
Under Kings County indictment No. 3196/2009, 42 defendants were charged with conspiracy to possess narcotics. Individual defendants were charged with related violent or narcotics crimes allegedly committed in furtherance of the conspiracy. The five above-captioned defendants, after severance for trial, were recently tried on the counts applicable to them.[1]
During trial the court received, against all five defendants, evidence of numerous statements that were admissions of coconspirators made in the course of and in furtherance of a conspiracy. (See People v Salko, 47 NY2d 230 [1979].) The People also sought to admit, against all the defendants on trial, a statement allegedly made by defendant Canales after all five defendants had been arrested. Likewise, the People sought to introduce admissions made by defendant Reyes after all five defendants had been arrested. The defense objected that the alleged conspiracy had ended with the arrests, and that the statements *585 were therefore not made by a conspirator in the course of and in furtherance of the conspiracy.
This court agreed that the contested admissions of Canales and Reyes did not fall within the category of coconspirator declarations. Each statement was received only against the declarant, Canales or Reyes. However, New York law does not plainly speak to the issue of when, for these purposes, a conspiracy ends. This opinion will therefore issue to explain the court’s ruling.
I
Indictment No. 3196/2009 charged dozens of individuals with conspiracy in the first and/or second degree for joining a three-year scheme to commit a class A felony, the possession of over four ounces of cocaine. The first-degree count of course alleged that certain conspirators, while over the age of 18, had conspired with individuals under the age of 16. The People’s theory was that the conspirators sold cocaine through a delivery service in neighborhoods like Sunset Park, Bay Ridge, Bensonhurst, and Dyker Heights. Customers could order cocaine with a phone call, and a car would be dispatched to make the delivery. The head of the conspiracy, Erik Rodriguez, purchased and maintained supplies of cocaine in excess of the requisite four ounces.
Erik Rodriguez pleaded guilty to first-degree conspiracy and other charges, and testified for the People at trial. Also testifying for the People was Jose Rodriguez, Erik Rodriguez’ cousin. The jury heard numerous conversations among the alleged conspirators, many including Erik Rodriguez, that were intercepted pursuant to wiretap orders.
The Rodriguez cousins and four of the defendants recently on trial — all but Canales — were arrested on March 20, 2009. On that day a rival cocaine dealer apparently stole a delivery car from defendant Reyes. Erik Rodriguez, Jose Rodriguez, Luis Lopez, Sandro Rodriguez, Calvin Sanchez and Aishan Reyes rode in three cars to a location on 51st Street in Brooklyn where Reyes shot two individuals in retaliation. The police, who had been listening to pertinent calls pursuant to the wiretap orders, immediately arrested all the conspirators present in the area except Reyes. Reyes was taken into custody hours later at a Brooklyn motel.
According to Erik Rodriguez, at the time of the arrests he had a quantity of cocaine at the residence he shared with his wife and coconspirator, Leslie Torres Rodriguez (Torres). The police *586 arrested Torres at that location on the night of March 20-21, 2009. The police searched the location under the authority of a search warrant, but recovered no cocaine.
The failure of the police to recover cocaine undercut the testimony of Erik Rodriguez. The People sought to introduce, through Erik Rodriguez, a statement allegedly made to him by Canales on March 21, 2009, after Canales’ own arrest. Erik Rodriguez would testify that Canales said he saw Leslie Torres while they were both in custody. Canales was told by Torres that she had secreted cocaine inside her person before she was arrested, and that she disposed of it in a toilet inside a holding cell.
The People further alleged that Reyes had made admissions to Jose Rodriguez while both were in custody. Reyes related details of the events immediately surrounding the shooting on 51st Street, which none of Reyes’ fellow conspirators had actually witnessed. Jose Rodriguez offered to testify about Reyes’ statements concerning the shooting.
The issue for the court was whether Canales’ and Reyes’ out-of-court declarations to the Rodriguez cousins were admissible against all five defendants on trial as declarations made by a conspirator in the course of and in furtherance of a conspiracy of which the five defendants were members.
II
In New York, much of the law of hearsay has been established by the common law, rather than by statutes. The Court of Appeals has long recognized that statements made by the agent of a party may be introduced against the party as an admission, so long as the agent was acting within the scope of his authority when he spoke. (See Stecher Lithographic Co. v Inman, 175 NY 124, 127-128 [1903]; Booth v Cleveland Rolling Mill Co., 74 NY 15, 25 [1878].) In addition, those who enter into a criminal agreement become one another’s agents. A conspirator’s statements are therefore “binding” on coconspirators, and admissible against them, if they are made within the scope of the conspirator’s authority to speak for the others. That is, the statements of a conspirator are admissible against his coconspirators if they are made in the course of and in furtherance of the conspiracy — the agency agreement. (People v Bac Tran, 80 NY2d 170, 179 [1992]; People v Salko, 47 NY2d at 237.)
This case readily supplies examples of statements that fall within the category of coconspirator declarations. Scores of cell *587 phone conversations were recorded pursuant to wiretap orders and were admitted without objection against all the defendants on trial. In some, dispatchers like Erik Rodriguez and Lopez advised deliverers like Reyes and Sanchez where customers were waiting. In others, Erik Rodriguez and Canales discussed purchasing cocaine. In others, the conspirators addressed the need to retaliate for the theft of a “company” car on March 20, 2009. Indeed, in a dramatic series of calls on that day, the conspirators are heard assembling on 51st Street near the scene of the later shooting and Reyes is advised by his fellows about how to use a handgun against the individual who was their target.
But all conspiracies come to an end. In this case the police arrested Erik Rodriguez, Jose Rodriguez, Luis Lopez, Sandro Rodriguez, and Calvin Sanchez just after the shooting, at about 8:05 p.m. on March 20, 2009. Reyes was arrested soon thereafter. That same night — two weeks before the scheduled “take-down” of the conspiracy — the police began an emergency “take-down” with dozens of arrests and the execution of a number of search warrants. As a result Canales and Leslie Torres were arrested late on the night of the shooting. For all practical purposes, the Erik Rodriguez conspiracy died shortly after 8:00 p.m. on March 20, 2009.
That circumstance is critical here. The statements at issue were made on March 21, 2009. When Torres told Canales that she had disposed of the stash of cocaine, when Canales relayed that information to Erik Rodriguez, and when Reyes gave Jose Rodriguez details of the 51st Street shooting, the conspiracy was over. Numerous members of the Erik Rodriguez retail operation were in custody, the police were plainly in command, and there was no prospect that the business of the conspiracy would be resurrected in the foreseeable future. It follows that the statements offered by the People were not admissible against the defendants on trial as coconspirator admissions. The statements were not made “in the course of and in furtherance of’ the Erik Rodriguez conspiracy.
HI
That conclusion is consistent with federal law concerning the coconspirator exception to the hearsay rule. Federal law is essentially the same as New York law as to coconspirator declarations. (See e.g. Lutwak v United States, 344 US 604, 617-618 [1953].) As to whether statements made “late” are admissible, *588 the leading decision is still Krulewitch v United States (336 US 440 [1949]). Krulewitch and another were charged with transporting a woman from New York to Florida for purposes of prostitution. The “victim” testified at Krulewitch’s trial. She related that, a month and a half after she was taken to Florida, an accomplice warned her not to speak to the authorities and said it would be better if only they two “t[oo]k the blame” as Krulewitch “couldn’t stand to take it.” (Krulewitch at 441.) The Supreme Court noted that when this statement was made, the “victim” was long since back in New York, and she, Krulewitch, and the accomplice all had been arrested.
The testimony about the statement had been admitted as the declaration of a coconspirator, and that was error. The original conspiracy “no longer existed” at the late date on which the statement was made, because by then the objectives of the conspiracy “either had failed or had been achieved.” (Krulewitch at 442.) The statement therefore was not made in furtherance of the conspiracy. The government argued that the statement was made in furtherance of “a continuing subsidiary objective” of the conspiracy, in that all conspirators expressly or implicitly agree to conceal facts and avoid conviction. But the Court rejected that expansive view of the scope of conspiracies, and of the coconspirator exception to the hearsay rule. (.Krulewitch at 443-444.) Eight years later the Court added, in a case addressing when a conspiracy ends for statute of limitations purposes:
“[A] subsidiary conspiracy to conceal may not be implied from circumstantial evidence showing merely that the conspiracy was kept a secret and that the conspirators took care to cover up their crime in order to escape detection and punishment. As was there stated, allowing such a conspiracy to conceal to be inferred or implied from mere overt acts of concealment would result in a great widening of the scope of conspiracy prosecutions, since it would extend the life of a conspiracy indefinitely. Acts of covering up, even though done in the context of a mutually understood need for secrecy, cannot themselves constitute proof that concealment of the crime after its commission was part of the initial agreement among the conspirators. For every conspiracy is by its very nature secret; a case can hardly be supposed where men concert together for a crime and advertise their purpose to the world. And again, every conspiracy will inevitably be followed by ac *589 tions taken to cover the conspirators’ traces” (Grunewald v United States, 353 US 391, 402 [1957]).
The New York decisions to date are consistent on the point. Even before Krulewitch, the Court of Appeals spoke to the issue in People v Ryan (263 NY 298 [1934]). In that case a grocery store owner was shot to death in a failed robbery attempt. The two robbers who went to the store afterwards admitted to fellow conspirator Ryan and another conspirator that they shot the grocer in furtherance of the robbery attempt. Proof of that declaration was admitted against Ryan under the coconspirator exception to show that he was guilty of felony murder, i.e, to show that the killing was in furtherance of the attempted robbery. But, said the Court,
“Declarations made by one conspirator in the prosecution of the enterprise are evidence against all, but they must be made in furtherance of the enterprise and while the enterprise is pending. Narration of the past facts after the enterprise has come to an end by success or failure is not admissible in evidence against the others. (People v. Davis, 56 N. Y. 95; Logan v. United States, 144 U. S. 263.) Here the statements were not made in furtherance of the common enterprise. That had come to an end by failure. They were merely part of explanation given for the failure. The conspirators in making the statements were certainly not acting as agents in behalf of their fellows when they made this explanation to them. It follows that the reception of this narration as evidence binding upon the defendants who had no personal knowledge of the facts is erroneous. It has no more logical probative force against them than any other hearsay testimony.” (Ryan at 305; see also People v Vaccaro, 288 NY 170 [1942]; People v Davis, 56 NY 95, 103 [1874] [“(a) mere relation of something already done for the accomplishment of the object of the conspirators is not competent evidence against the others”].)
Consistent with the Ryan holding are two more recent opinions of New York’s trial courts. First, in People v Wisan (132 Misc 2d 691 [Sup Ct, Richmond County 1986]), the court considered whether certain conduct constituted overt acts done during the charged murder conspiracy. Those alleged overt acts all occurred after the murder. The court concluded that when *590 the victim was killed, “the sole objective of the conspiracy was accomplished, and the conspiracy was at an end.” (Wisan at 693.)[2]
Second, in People v De Ruggiero (94 Misc 2d 20 [Sup Ct, Westchester County 1978]), the court considered narrative statements of alleged members of a murder conspiracy intercepted pursuant to an eavesdropping order two to three months after the homicide. The court noted that “[n]arration of past facts after the enterprise has come to an end by success or failure is not admissible in evidence against the others.” (De Ruggiero at 22.) Further, the court stated that
“[t]he United States Supreme Court, on more than one occasion, has rejected the proposition that an agreement to conceal a conspiracy is to be deemed part of the conspiracy and serves to extend the duration of the alleged conspiracy; i.e, ‘after the central criminal purposes of a conspiracy have been attained, a subsidiary conspiracy to conceal may not be implied from circumstantial evidence showing merely that the conspiracy was kept a secret and that the conspirators took care to cover up their crime in order to escape detection and punishment.’ "(De Ruggiero at 22-23.)
In this case, the statements at issue all were made within less than 24 hours of the end of the Erik Rodriguez conspiracy. But they were made after the conspiracy ended. And under the authority noted above, the statements were not made in the course of and in furtherance of that Erik Rodriguez conspiracy.
IV
That does not quite end the matter. The coconspirator rule, being an offshoot of the rule that statements of agents are admissible, does not depend on any particular conspiracy being alive. For example, it is possible that when one conspiracy comes to an end, members of that initial conspiracy could agree to enter into another. That new conspiracy might be designed to intimidate witnesses, destroy evidence, or otherwise violate the Penal Law in an effort to thwart a prosecution of the crimes to which the earlier conspiracy related. (See People v Fiore, 12 NY2d 188, 199-200 [1962].) It is even possible that the People could prove that the conspirators were far-sighted enough to *591 enter into a secondary conspiracy of this sort in advance, before the first conspiracy came to an end. (Cf. People v Ribowsky, 77 NY2d 284, 292-294 [1991] [declarant’s perjury was intended to allow the conspirators’ fraud to continue]; People v Storrs, 207 NY 147, 155-157 [1912] [conspiracy continued after forgery, encompassing effort to exploit the forgery].)
If such a “cover-up” conspiracy comes into being, admissions made in the course of and in furtherance of the new conspiracy can be introduced as agency admissions against the other coconspirators, including during a trial as to the original conspiracy. The rule is plain: the “conspiracy” as to which an agent’s statements are “binding” on defendants by no means has to be a conspiracy charged in the indictment. (People v McKane, 143 NY 455, 470 [1894].) Indeed, the modern federal cases apply the rule that there need be no particular relationship between the crimes for which a defendant is being tried, and the conspiracy through which he implicitly authorized an agent to make statements. (See United States v Gricco, 277 F3d 339, 354-355 [3d Cir 2002, Alito, J.]; United States v Ellis, 156 F3d 493, 497 [3d Cir 1998]; United States v Arce, 997 F2d 1123, 1128 [5th Cir 1993].) The admission of an agent’s statements depends on their being within the scope of any agency, not on the intended objects of the agency agreement itself. Any criminal agreement can therefore create an agency relationship such that the agent’s statements are admissible against a coconspirator at any trial in which they are relevant, even a trial not directly related to the crimes that were the objects of the conspiracy.
In this case, however, this principle is of no help to the People. The People have suggested that a conspiracy to possess drugs implicitly includes an agency agreement to destroy drugs and related evidence after the police arrest some of the relevant players. That is not the law. There is no presumption that conspirators in any case make agreements as to how to cover up their crimes if they should be unexpectedly arrested. In the absence of proof of such an agreement, the court cannot simply assume that such an agreement was made. (See Krulewitch v United States.)
That is, none of the statements attributed to Canales and Reyes were the apparent product of an agency agreement that was vital when the statements were made. As to the Canales statement, narrating Torres’ assertion that she had destroyed cocaine before the police found it, it can only be said that the *592 initial conspiracy was about selling cocaine, not about destroying it. Torres acted, if her reported statements are taken at face value, on an emergency precipitated by police intrusions after the conspiracy to possess cocaine was undone. She acted alone to destroy evidence, and certainly had entered into no agreement with the five defendants on trial to destroy evidence.
As to Reyes’ statements, they were pure narratives of past events, of the type discussed in Ryan. There was no new agreement even with the witness Jose Rodriguez to commit crimes; Reyes simply told his story. Reyes’ historical account, given after the conspiracy was over, was binding on no one but himself.
This opinion concludes with that thought. The statements of Canales and Reyes were not proved to have been made in the course of and in furtherance of the Erik Rodriguez conspiracy, or any other. But they were of course admitted at trial against the respective declarant, Canales or Reyes, with appropriate limiting instructions. And, as neither statement mentioned any other defendant on trial, there were no Bruton implications.

. On April 20, 2011, defendants Anthony Canales, Luis Lopez, Aishan Reyes and Sandro Rodriguez were acquitted of conspiracy in the first degree. All the defendants except Sandro Rodriguez were convicted of conspiracy in the second degree. All the defendants except Anthony Canales were convicted for attempted murder in the second degree, assault in the first degree, and related crimes for a shooting that took place on March 20, 2009. Luis Lopez was convicted of additional possessory offenses, including criminal possession of a controlled substance in the second degree.

. This court would not necessarily agree that the acts at issue in Wisan could not be considered over acts done in furtherance of the conspiracy.