■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v OSCAR HERNANDEZ, Appellant.—Judgment of the Supreme Court, New York County (Shirley Levittan, J.), rendered November 20, 1987, which, following a bench trial, convicted defendant of conspiracy in the second degree (Penal Law § 105.15) and sentenced him to an indeterminate term of imprisonment of from 4½ to 13½ years, unanimously reversed, on the law and the facts, the judgment vacated and the indictment dismissed.

Defendant and five others, Merci Vega, Arcadio O'Campo, Marina O'Campo, Robert Posada and Manuel Cardenas, were indicted by a New York County Grand Jury in connection with negotiations by members of a Houston-based crime organization to sell 100 kilograms of cocaine to undercover investigators of the Drug Enforcement Task Force for $2 million, and with the actual transfer to these investigators of some five kilograms. The codefendants each pleaded guilty to criminal sale of a controlled substance in the first degree and were sentenced to indeterminate terms of three years to life or of six years to life. Hernandez was tried alone.

The People's evidence against Hernandez, viewed in a light most favorable to the People (People v Benzinger, 36 NY2d 29, 32 [1974]), established the following: Between November 24, 1986 and December 7, 1986, codefendants Vega, Arcadio and Marina O'Campo and Robert Posada engaged in negotiations to sell 100 kilos of cocaine to undercover agents and pursuant to this agreement Vega gave five sample kilos to the agents prior to completing the transaction. Hernandez did not directly participate in either the negotiations or exchange of drugs. However, police surveillance revealed that during the two-week period of negotiations, Hernandez, who drove a yellow taxicab, regularly picked up the codefendants at their hotels, met with them for extended periods of time, drove his

taxi in an erratic manner while the codefendants were passengers as if to evade surveillance, appeared to be engaged in countersurveillance, and blocked traffic.

In addition, an undercover agent testified that on December 6, 1986, Vega advised him that she had spoken with Marina O'Campo who told her that the cab driver, who was part owner of the cocaine, wanted the deal scaled down. Vega told the agent that she was going to contact the Colombians to overrule the cab driver's decision. On December 7, 1986, before turning over samples of cocaine, Vega and Posada informed the agent that the cab driver would not permit the deal to be completed unless it was reduced to 50 kilos. As the agent left this meeting, Hernandez, who was waiting beside his taxi outside the hotel, nodded to the officer. On December 8, the agreed-upon date of the sale, Arcadio O'Campo told the agents that the cab driver wanted to proceed with the deal five kilos at a time. When one of the agents suggested that the deal be made 25 kilos at a time, Arcadio O'Campo stated that he would speak to his partner in Queens in order to get the final approval. Thereafter, the O'Campos and Posada visited the defendant's home in Queens where they were observed conversing with the defendant. Arcadio O'Campo later that day advised one of the agents that he had spoken with his partner and that the deal could proceed that evening, 12 kilos at a time.

Since the People failed to establish an independent prima facie case as to defendant's membership in the conspiracy, the trial court erred in admitting (and considering) the hearsay accusations of defendant's alleged coconspirators.

In *People v Sanders* (56 NY2d 51, 62 [1982]), the Court of Appeals articulated the well-settled law in this regard: "In this State, it has long been settled that the declarations of one coconspirator made in the course and furtherance of a conspiracy are admissible against all other coconspirators as an exception to the general rule against hearsay. * * * The coconspirators' exception is predicated primarily on the theory of vicarious admission, to wit: parties engaged in a criminal partnership are bound by one another's declarations to the same extent that a principal is bound by the declarations of his agent. * * * However, before evidence can be admitted against a defendant under this hearsay exception, the People must establish, by prima facie proof, the existence of a conspiracy between the declarant and the defendant 'without recourse to the declarations sought to be introduced.' "

Those acts attributed to the defendant as evidence of his

involvement in the conspiracy, even when viewed in the light most favorable to the People, are insufficient to establish a prima facie case.

The People's contention that Arcadio O'Campo visited Hernandez on December 7, 1986 in order to obtain approval for the sale of a large quantity of cocaine and that this establishes Hernandez as a coconspirator fails for several reasons. First, this contention arises from statements made by codefendants implicating defendant as a coconspirator, which statements may not be relied upon to establish a prima facie case. Furthermore, before meeting with the defendant, the O'Campos and Posada made telephone calls from public telephones. Therefore, it cannot be said that O'Campo's actions established that the defendant was the partner from whom consent for the sale was obtained.

Moreover, evidence that the defendant drove erratically, ate meals with the codefendants and appeared to be engaged in surveillance while O'Campo had conversations with persons in other vehicles does not demonstrate membership in the conspiracy. The defendant was not involved in the illegal negotiations nor was there evidence that he asked for or received any proceeds. *(See, People v Berkowitz,* 50 NY2d 333 [1980]; *People v Glass,* 133 AD2d 705 [2d Dept 1987], *lv denied* 70 NY2d 932 [1987]; *People v Riviello,* 111 AD2d 878 [2d Dept 1985].) Nor does the nonhearsay evidence suggest that the defendant was the supplier of the drugs. *(See, People v DiNapoli,* 66 NY2d 812 [1985], *revg* 108 AD2d 650 [1st Dept 1985].) Here, the People point to no possession of drugs by Hernandez, no statements made during negotiations and no other act suggesting complicity in the sale. The defendant's conduct was equally consistent with innocence as with guilt. Concur— Carro, J. P., Rosenberger, Ellerin, Wallach and Smith, JJ.