■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v STEVE SCOTT, Appellant. [614 NYS2d 739] —Appeal by the defendant from a judgment of the Supreme Court, Kings County (Goldstein, J.), rendered June 1, 1992, convicting him of criminal possession of a controlled substance in the first degree and

criminal possession of a controlled substance in the third degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law, the indictment is dismissed, and the matter is remitted to the Supreme Court, Kings County, for the purpose of entering an order in its discretion pursuant to CPL 160.50.

At approximately 2:30 P.M. on August 28, 1984, two police officers began a surveillance of a building located at 30 Lott Avenue in Brooklyn, a suspected drug-dealing location. During the next hour, they observed a number of people going to and from the building's basement door. At approximately 3:30 P.M., the two officers returned to their precinct and reported their findings to their commanding officer. The two officers, accompanied by several other officers, returned to the building at about 5:00 P.M. After observing several other individuals go to and from the basement door for about 10 minutes, the police forcibly entered the basement of the building.

The basement consisted of a boiler room on the left, a small room on the right and a larger room in the back which was full of garbage and debris. The police searched the basement and found the defendant hiding in the boiler room underneath a pile of garbage. Although the police found a total of 588 tinfoil packages scattered throughout other parts of the basement, none was found in the boiler room. These packages were not tested. In the small room, which contained a cot and a dresser, a brown bag containing 718 tinfoil packages was recovered from a drawer in the dresser. Four hundred fifty of the tinfoil packages recovered from the dresser were tested and found to contain cocaine.

After a jury trial, the defendant was convicted of criminal possession of a controlled substance in the first degree and criminal possession of a controlled substance in the third degree.

On appeal, the defendant argues that the People failed to prove that he had constructive possession of the 718 tinfoil packages of cocaine recovered from the dresser drawer. We agree. In order for the People to sustain a conviction for criminal possession of cocaine where the defendant does not physically possess it and the cocaine was not found in open view, the People must prove that the defendant was in constructive possession of the cocaine, i.e., that he had "dominion and control" over the area in which the cocaine was found (see, Penal Law § 10.00 [8]; *People v Manini,* 79 NY2d 561, 573; *People v Pearson,* 75 NY2d 1001). The defendant's mere pres-

ence in an area where cocaine was found is not sufficient to establish that he exercised such dominion and control as to establish constructive possession *(see, People v Harvey,* 163 AD2d 532; *People v Davis,* 153 AD2d 949, 951; *People v Dawkins,* 136 AD2d 726, 727).

The People failed to present any evidence tending to show that the defendant resided, frequented, or had control over the basement in which the cocaine was found. Furthermore, there was a door which led to the occupied portions of the building. The People offered no proof that the defendant had any connection to the basement except his mere presence therein on the day in question *(see, People v Pearson, supra,* at 1001; *People v Headley,* 143 AD2d 937, 938, *affd* 74 NY2d 858). Indeed, the People offered no proof that the defendant had been inside the building for any length of time. The police officers had left the area around 3:30 P.M. and returned to the building at about 5:00 P.M., and watched it for about 10 minutes before gaining entry. Thus, it could just as easily be inferred that the defendant had only arrived on the scene shortly before 5:00 P.M. and had only been in the basement for a few minutes before the police arrived *(see, People v Francis,* 79 NY2d 925). Moreover, the only packets that were tested for cocaine were found in a bag inside a dresser drawer in another part of the basement and not in plain view *(cf., People v Andrews,* 182 AD2d 768). Accordingly, since the defendant's possession of the cocaine was not established, the judgment should be reversed and the indictment dismissed.

Contrary to the suggestion made by our colleagues in their dissent, we find that the assertion that the basement was abandoned and heavily fortified is not sustained by the record. The building itself, in which the business was located, was not abandoned, since the floors above the basement were occupied, nor do we understand what is meant by the term "heavily fortified". Further, the suggestion that the defendant was hiding under garbage 10 feet from the drugs which were found is misleading, as is the implication that the money that was recovered was in close proximity to the defendant. The defendant was, in fact, found on a couch in the boiler room. The drugs which were tested were in a brown paper bag inside a drawer in a dresser which was located in a separate room which was approximately 10 feet away from the boiler room. The money was also found in that separate room containing the dresser.

The dissenters have come to the conclusion that the tinfoil packets on the floor were discarded; and, while that may be so,

there is no evidence in the record to that effect, nor were any tinfoil packets found in the boiler room where the defendant was discovered.

The dissent also suggests that this basement was a "small fortress which was sealed off". While there was some evidence that the windows were blocked, there was also some evidence that there was a door leading from the basement to the upper floors of the building.

We also find that it was error to admit into evidence the untested tinfoil packages that were found scattered elsewhere throughout the basement but, significantly, not in the boiler room. While it might be argued that the evidence of those packages was relevant to the defendant's knowledge of the packages in the dresser (see, People v Carpenter, 187 AD2d 519), the prejudicial effect of such evidence, particularly since they were never tested for cocaine, outweighed any probative value that they may have had (see, People v Davis, 43 NY2d 17).

In light of our determination, we do not consider the defendant's remaining contentions. Balletta, J. P., Lawrence and Altman, JJ., concur.

Rosenblatt and Ritter, JJ., dissent, and vote to affirm the judgment of conviction, with the following memorandum: We dissent, and find that the jury had an ample basis on which to find the defendant guilty. There are established facts that support a legally sufficient case.

The police broke into the abandoned basement premises, which were heavily fortified, and found the defendant inside, alone. He was hiding under a pile of garbage 10 feet away from the drugs that formed the basis for the conviction. When they encountered him, he spontaneously exclaimed, "It's not mine." In very close proximity to the defendant there was $207 on the bed, and the premises were strewn with discarded tinfoils of an appearance identical to the drug tinfoils found in the dresser. Although the discarded tinfoils—588 of them— were not tested, they were found throughout the premises, over the hallway, the bed, the bedroom floor, and next to the defendant.

Under these circumstances, the failure to test the discarded tinfoils does not appreciably detract from their value as circumstantial evidence, establishing the defendant's knowledge, dominion, and control over the drugs in the drawer. Although it was theoretically possible for the defendant to have gained access to the premises from the inside of the

building, and that he was let in from the floor above, by the "superintendent," who, he claims, engaged him to clean up the premises, the jury was free to reject that explanation as far-fetched, unsupported, and negated by the countervailing evidence that the defendant, hiding under a pile of garbage, was alone in a small fortress-like setting, sealed off and virtually impenetrable except from the outside. Accordingly, we would affirm the judgment.