■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JULIO ROMAN, Appellant. [622 NYS2d 47] —Judgment, Supreme Court, New York County (Leslie Crocker Snyder, J.), rendered April 3, 1992, after a jury trial, convicting defendant of conspiracy in the second degree (Penal Law § 105.15), criminal sale of a controlled substance in the first degree (Penal Law § 220.43 [1]), and criminal possession of a controlled substance in the first degree (Penal Law § 220.21 [1]), and imposing concurrent prison terms of 8⅓ to 25 years and two terms of 15 years to life, respectively, unanimously reversed, on the law and the facts, the judgment is vacated, and the indictment is dismissed. The matter is remitted to the trial court for the purpose of entering an order in favor of the accused pursuant to CPL 160.50, not less than 30 days after service of this order upon the respondent, with leave during this 30 day period to respondent to move and seek any further stay of the implementation of CPL 160.50 as in the interest of justice is required.

Testimony educed at trial revealed that after preliminary negotiations concerning the sale of 4½ ounces of heroin, undercover Detective Miguel Perez met Julio Bello and Eladio Sanchez in front of a Brooklyn restaurant on September 27, 1990. Detective Perez and Bello then proceeded into the restaurant and were joined a short time later by Jaime Canalerio. After some discussion between Bello and Canalerio, Detective Perez was informed that due to a mix-up, only three ounces of heroin were available for sale.

Detective Perez thereafter left the restaurant, having told Bello and Canalerio he had to clear the sale with his "boy", and informed his backup team he needed $23,000, which was delivered a short time later by Detective Hector Vega. As Detective Perez was returning to the restaurant to complete

the transaction, he spotted Canalerio and defendant Julio Roman sitting together in a gray Pontiac. Canalerio then followed Detective Perez into the restaurant, where the money was exchanged for the narcotics. Upon leaving the area, Detective Perez again saw defendant seated in the Pontiac.

Detective Perez arranged a second sale of heroin with Bello which, after a failed attempt, was to take place on November 1, 1990 at a Brooklyn apartment. On that date, Detective Perez and Detective Vega drove to the apartment building and were greeted outside by Bello, who led Detective Perez to an apartment inside the building where they were admitted by Canalerio. Bello then told Canalerio to get "the product", whereupon Canalerio proceeded to a back room and returned with two packages containing the heroin.

At this juncture, Detective Perez testified that he told Canalerio he wanted to complete the transaction outside and Canalerio allegedly responded: "Well, I gotta go ask the old man. It's not my stuff." Canalerio then approached defendant and began speaking to him in Spanish. Detective Perez then left quickly before receiving an answer, obtained the money from Detective Vega, and returned to the building. As Detective Perez reached the doorway, the backup team swarmed in and arrested defendant, Bello, Canalerio, Sanchez and two other men that Detective Perez was unaware were in the apartment.

Defendant was convicted, after a jury trial, of conspiracy in the second degree, criminal sale of a controlled substance in the first degree and criminal possession of a controlled substance in the first degree and was sentenced to a term of imprisonment of from 8⅓ to 25 years on the conspiracy count and two terms of from 15 years to life on the sale and possession counts. On appeal, defendant contends that the verdict was against the weight of the evidence and that the hearsay statement of alleged coconspirator Canalerio was improperly admitted by the trial court. We agree and now reverse.

The trial court erred when it admitted Canalerio's hearsay statement: "I gotta go ask the old man. It's not my stuff." In *People v Persico* (157 AD2d 339, *lv denied* 76 NY2d 895), we clearly rejected the Federal standard set forth in *United States v Inadi* (475 US 387), in which the United States Supreme Court narrowed a defendant's right to confrontation and held that the unavailability of a nontestifying coconspirator need not be shown as a condition of admitting that individual's out-of-court statements at trial. Rather, we con-

cluded that as a matter of State constitutional doctrine, the unavailability of a coconspirator must be demonstrated before hearsay statements attributed to that individual are admissible *(People v Persico, supra,* at 345; *People v Torres,* 196 AD2d 758, *lv denied* 82 NY2d 854). The Fourth Department has since adopted our holding in *Persico (People v Buie,* 201 AD2d 156). In light of the foregoing precedent, our decision in *People v Tarantino* (156 AD2d 244, *lv denied* 76 NY2d 743) should not be followed.

Turning to the facts of the case at bar, the Assistant District Attorney, in addressing the issue of the availability of Canalerio, stated during the course of the trial proceedings that: "I have spoken with Michael O'Connor who represented Jaime Canalerio and he has informed me, while he had not spoken with his client, *he would have advised him* to take the Fifth Amendment should he have been called here to testify." (Emphasis added.)

In our view, the foregoing is simply insufficient to demonstrate Canalerio's unavailability and, at most, reflects unprovided legal advice that Canalerio may or may not have heeded even if it had been received. Accordingly, Canalerio's hearsay statements should not have been heard by the jury.

Moreover, viewing the evidence in a light most favorable to the People *(People v Malizia,* 62 NY2d 755, *cert denied* 469 US 932; *People v Jemmott,* 202 AD2d 366, *lv denied* 83 NY2d 911), we find that the evidence was insufficient as a matter of law to support the verdict. Other than establishing defendant's presence at the scene, there was no evidence of any overt acts or purposeful behavior which would connect defendant to, or demonstrate defendant's participation in, a conspiracy to commit a crime *(People v Berkowitz,* 50 NY2d 333, 343; *People v Givens,* 181 AD2d 1031, *lv denied* 79 NY2d 1049). Nor does defendant's presence, without more, establish his constructive possession of the contraband *(People v Headley,* 74 NY2d 858; *People v Scott,* 206 AD2d 392, 394). Concur—Murphy, P. J., Sullivan, Rosenberger, Nardelli and Tom, JJ.