[624 NYS2d 113]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v EDJARDO DIAZ, Respondent.

First Department, March 16, 1995

---

---

## APPEARANCES OF COUNSEL

*Carol A. Remer-Smith* of counsel, New York City *(Sandra L. Sneed* on the brief; *Robert M. Morgenthau, District Attorney* of New York County, attorney), for appellant.

*Laura Rossi-Ortiz* of counsel, New York City *(E. Joshua Rosenkranz* and *Joseph M. Nursey,* attorneys), for respondent.

## OPINION OF THE COURT

Tom, J.

The People herein appeal from the dismissal of an indictment charging defendant Edjardo Diaz with single counts of criminal sale of a controlled substance in the third degree (Penal Law § 220.39 [1]) and criminal possession of a controlled substance in the third degree (Penal Law § 220.16 [1]).

Testimony educed before a Grand Jury from the undercover

officer involved in the illicit narcotics transaction revealed that on September 9, 1992, at approximately 12:05 A.M., defendant Diaz, a Mr. David Rodriguez and a third, unidentified male were approached by the officer, who was assigned to the Manhattan North Tactical Narcotics Team, at the corner of East 119th Street and 2nd Avenue in upper Manhattan. The undercover officer asked the men where he could buy "trays", a street term apparently referring to $3 crack vials. Defendant asked how many he wanted and the undercover replied three. Defendant then allegedly expressed his reluctance to sell crack to the officer because he did not know him, at which time the officer stated he understood, turned and began to walk away.

At that juncture, Rodriguez gestured for the officer to return and again asked how many he needed, to which the undercover repeated three. The officer was then directed to enter a nearby building to purchase the drugs, at which suggestion the undercover balked and said he had been robbed before. At that, defendant got up and proceeded into the building by himself. In the interim, the officer told Rodriguez that he wanted to go to a bodega to buy cigarettes, but Rodriguez insisted he stay, allegedly stating that defendant "is going to get it for me." Upon being recalled, the officer testified to essentially the same thing, that Rodriguez stated that defendant "is getting it for you."

Defendant subsequently emerged from the building accompanied by a Ms. Norma Rodriguez and was approached by the undercover officer. Defendant informed the officer that Ms. Rodriguez "has it" and the officer then received three vials of crack cocaine from Ms. Rodriguez in exchange for cash. The undercover officer left the vicinity, radioed his backup team and, a short time later, defendant, David Rodriguez and Norma Rodriguez were arrested.

Pursuant to New York County indictment number 10201/92, filed October 15, 1992, defendant and the two other individuals were each charged with single counts of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree. On or about December 7, 1992, defendant, in his omnibus motion, moved, *inter alia,* to dismiss the indictment or, in the alternative, to reduce the charges pursuant to CPL 210.20 on the ground that the evidence presented to the Grand Jury was insufficient to support the charges.

■ On or about March 15, 1993, after reviewing the Grand Jury minutes, the trial court dismissed the indictment, with leave to re-present to another Grand Jury, on the ground that the integrity of the proceeding had been impaired within the meaning of CPL 210.35 (5). The People appeal and we now reverse.

The trial court found that the introduction of David Rodriguez' statement "he is getting it for you" constituted inadmissible hearsay which prejudiced the defendant because of the closeness of the case with regard to defendant's involvement. The court also concluded that the foregoing prejudice was exacerbated by the prosecutor's failure to issue a curative instruction directing the grand jurors to disregard the hearsay statement and by the prosecutor's factual misstatement indicating that it was specifically defendant who directed the undercover officer into the building.

It is the function of the Grand Jury to protect citizens from unfounded prosecutions as well as to investigate whether sufficient evidence exists to accuse a citizen of a crime *(People v Ford,* 62 NY2d 275, 282; *People v Pelchat,* 62 NY2d 97, 104-105; *People v Iannone,* 45 NY2d 589, 594), whereas the duty to determine whether the People have proven the guilt of the accused, beyond a reasonable doubt, resides with the petit jury *(People v Calbud, Inc.,* 49 NY2d 389, 394). While general criminal trial court evidentiary rules apply to a Grand Jury proceeding (CPL 190.30 [1]; *People v Mitchell,* 82 NY2d 509, 513), such a proceeding is not a " 'mini trial' " *(People v Lancaster,* 69 NY2d 20, 30, *cert denied* 480 US 922, citing *People v Brewster,* 63 NY2d 419, 422). Therefore, the validity of an indictment "does not turn on mere flaw, error or skewing" of the proceeding *(People v Darby,* 75 NY2d 449, 455; *People v Winningham,* 209 AD2d 461) and the receipt of evidence which might not be admissible at trial does not necessarily impair the integrity of a Grand Jury proceeding *(People v Taylor,* 181 AD2d 408, 409, *lv denied* 79 NY2d 1055).

Turning to the facts of the case at bar, it is clear to us that what the trial court found to be "inadmissible hearsay" was not inadmissible but was, in fact, allowable under the exception carved out for statements made by coconspirators. The elementary governing principles of this exception were recently restated by the Court of Appeals in *People v Tran* (80 NY2d 170, 179), as follows: "A declaration by a coconspirator during the course and in furtherance of the conspiracy is

admissible against another coconspirator as an exception to the hearsay rule *(People v Rastelli,* 37 NY2d 240, 244, *cert denied* 423 US 995). However, this evidence may be admitted only upon a showing that a prima facie case of conspiracy has been established *(People v Salko,* 47 NY2d 230, 237, *rearg denied* 47 NY2d 1010; *People v Rastelli, supra).* 'Of course, the determination whether a prima facie case of conspiracy has been established must be made without recourse to the declarations sought to be introduced' *(People v Salko, supra,* at 238; *see also,* Richardson, Evidence § 244 [Prince 10th ed])." *(See also, People v Alwadish,* 67 NY2d 973, 974; *People v Sanders,* 56 NY2d 51, 62, *rearg denied* 57 NY2d 674; *People v Hernandez,* 155 AD2d 342, 343-344, *lv denied* 75 NY2d 813; *People v Ardito,* 86 AD2d 144, 147, *affd* 58 NY2d 842.)

The facts herein, distinct from the statements made by David Rodriguez, set forth the following series of events: defendant converses with the undercover officer about a possible narcotics transaction but declines to make the sale because he does not know the undercover officer and states that he therefore "didn't feel right"; David Rodriguez then beckons for the officer's return and, either Rodriguez or defendant or both, as the officer's testimony, based on the record, is unclear on this point, direct the undercover officer into a certain building; once the officer declines, defendant immediately proceeds into the building; defendant then exits the building a short time later with Norma Rodriguez; and, upon being approached by the undercover officer, defendant, without hesitation or prodding, tells the undercover officer that "she has it" and points to Ms. Rodriguez who then hands the officer narcotics in exchange for money.

Viewing the foregoing in a light most favorable to the People *(People v Galatro,* 84 NY2d 160, 163; *People v Jennings,* 69 NY2d 103, 114; *People v Glessing,* 206 AD2d 786, 787; *People v Lemus,* 181 AD2d 609, 610), we conclude that the People have established, without recourse to Rodriguez' declarations, a prima facie case of defendant's involvement in a conspiracy to sell narcotics. Accordingly, the statements of David Rodriguez are admissible as an exception to the hearsay rule being a declaration made by a coconspirator.*

---

* No issue was raised by defendant as to the unavailability of the coconspirator as a witness since codefendant David Rodriguez, who was indicted at the same time, elected not to waive immunity and not to testify *(People v Roman,* 212 AD2d 390; *People v*

With regard to defendant's strained, somewhat remarkable assertions that his actions were consistent with those of an innocent, uninvolved bystander, it is irrelevant that innocent inferences can be drawn from defendant's actions as long as the Grand Jury could rationally have drawn a guilty inference *(People v Deegan,* 69 NY2d 976, 979; *People v Matos,* 195 AD2d 287, 288, *lv denied* 82 NY2d 756). We find that the remaining evidence, absent the alleged hearsay statements, clearly supports a finding that the People established a prima facie case of conspiracy to sell a controlled substance.

Moreover, even if we were to conclude that the statements in question were hearsay and were therefore inadmissible, we would still hold that the integrity of the proceeding was intact due to the presence of sufficient, admissible evidence which overwhelmingly indicates defendant's involvement with the sale.

■ We also find fault with the trial court's conclusion that any error in the admission of the purported hearsay statements was heightened by the prosecutor's misstatement concerning who directed the officer to enter the building. The officer's vague testimony on this point is as follows: "[S]o *they* had directed me to a building, one building, it's halfway down, it's a quarter way down the block. *He* told me to go in that building" (emphasis added).

At that time, both David Rodriguez and defendant were still present on the corner. Upon a later request for clarification from one of the grand jurors, the prosecutor stated: "Of course, you all know that it is your recollection of the testimony that matters here. However, you may recall * * * that [the officer] testified that Eduardo *[sic]* Diaz asked him to go inside a building."

The undercover officer was thereafter recalled and, after further questioning, the Grand Jury had the facts clarified to its satisfaction. Further, there was no impairment of the integrity of the Grand Jury by the prosecutor's subtle factual misstatement, especially in light of the vagueness of the testimony on that precise point by the undercover officer as well as his admonition to the jurors to rely on their own recollection of the testimony and the recalling of the undercover.

In sum, the defendant has failed to meet the "very precise

*Torres,* 196 AD2d 758, *lv denied* 82 NY2d 854; *People v Persico,* 157 AD2d 339, *lv denied* 76 NY2d 895).

and very high" statutory test for establishing the impairment of the Grand Jury and, as a result, the trial court erred in granting the exceptional remedy of dismissing the indictment (*People v Darby, supra,* at 455; *People v Hardison,* 181 AD2d 506, 508, *lv denied* 79 NY2d 1050).

Accordingly, the order of Supreme Court, New York County (James A. Yates, J.), which was entered on March 15, 1993, is unanimously reversed, on the law, and the indictment is reinstated.

WALLACH, J. P., ROSS, RUBIN and NARDELLI, JJ., concur.

Order, Supreme Court, New York County, entered March 15, 1993, reversed, on the law, and the indictment reinstated.